GUY D. SCOVILLE, Appellee, v. CLEAR LAKE BAKERY, Appellant.

No. 41086.

J. E. Williams, for appellee.

Breese & Cornwell, for appellants.

Evans, J.—The defendant is a co-partnership engaged in the operation of a bakery at Clear Lake. It was the owner of a truck operated by its employee, Fankel. The accident under consideration occurred on February 28, 1930, at about 11:30 A. M., on U. S. highway #18, at a point about two miles east of the town of Sexton, in Kossuth County. The evidence in the case is not in conflict. On the morning of the date named, the defendant's employee, Fankel, was driving his truck. The engine of the truck quite suddenly "died," without any cause known to the driver. The driver made repeated efforts to start the engine, without avail. He hailed the drivers of passing vehicles with a view of getting their help, but all these, even as the illustrious travelers on the Jericho road some years before, "passed by on the other side." The truck weighed 5600 pounds. It was beyond the power of the driver to move it. He thereupon went to the nearest house, three-quarters of a mile away, for the purpose of telephoning for help. He did engage such help and returned. When he returned he found his truck in the ditch,—the plaintiff having collided therewith. The paving was eighteen feet wide, with five-foot berms on either side. The truck was headed west, and was on its proper side of the paving. The topography of the ground where the accident occurred was substantially level, and such level condition extended in each direction from the truck to an indefinite distance.

For such distance the truck was plainly visible to all persons approaching from either direction. The only witnesses to the immediate circumstances of the accident were the plaintiff and the members of his party. It is conceded by plaintiff and all his witnesses that the truck was plainly visible and was actually observed by all of them in abundant time to avoid the same. Plaintiff and his wife were in a funeral procession. At the head of this procession was the hearse, driven by the undertaker, Merritt. Next to the hearse, and a few rods distant therefrom, was the car in which plaintiff and his wife were riding. It belonged to, and was driven by, Sifert, the plaintiff's uncle. The funeral procession was also proceeding west. Three hundred feet east of the truck, the driver of the hearse turned to the left, for the purpose of passing the truck, and so continued for a distance of seventy-five feet after passing the same. Sifert's car followed the course of the hearse, and then receded therefrom in order to give the road to a car approaching from the west. After the car from the west had proceeded eastward, Sifert again turned to the left to go around the truck. In so doing his car struck the left rear corner of the truck, whereby the truck was driven across the berm into the ditch. The plaintiff, as a witness, described the accident as follows:

''As the hearse turned out to pass the car we turned out and followed the hearse. As soon as we saw the car after the hearse turned out, we noticed that it was standing still. I was looking ahead from the back seat during the drive that day. I watched the road quite a bit. After the hearse got by the truck, it turned back to the north side and then we saw a car coming from the west. I saw the car coming. I hollered at my Uncle and he stopped. I hollered to him to stop, that he couldn't get through; this other car was standing still. He applied the brakes and came to as near a stop as he could and turned back to the north to give this other car the right of way to come through. The other car shot on by. After Mr. Sifert, who is my Uncle, applied his brakes and turned to the right, he then turned back to the left to avoid hitting the truck but hit the corner of it. He was almost to a stop when he hit the truck. He hit the rear left-hand corner of it. I was riding on the right-hand side of the car in the back seat. The right front

door of our car struck the truck and caved in the right side of the body.''

## Cross-examination

''The accident occurred about noon. I saw the truck in the road when we were two or three hundred yards east of it. I didn't notice that it was a truck then but did notice there was an automobile in the road. I saw it over the hearse. When we was back we was watching the road ahead. The hearse turned out to the south side of the road and passed the truck and then turned back onto the north half of the pavement. At the time that the hearse turned back to the north half of the pavement, we were turning out for the truck,— turning to the south side of the pavement,—and at that time we were possibly three car lengths, or maybe four, when we started to turn out. I should judge around fifty feet. We didn't see the car coming east until the hearse pulled to the north side of the road after it had passed the truck. I didn't see it until then. I was observing the road as much as I could from where I was sitting. I had observed the road west before then. All the way along we had observed the road. I suppose we had seen the car coming from the west but I don't just recollect. I don't remember seeing the car until the hearse turned out of the way. The road to the west of the truck is practically level for some distance. The hearse and the truck were on the north side of the highway until the hearse pulled out to go around the truck. I didn't observe the road west of the truck a great deal until we came to the point of passing. We was observing the road all along. Sometime during the last quarter of a mile I saw that road west of the truck but didn't notice any car coming from the west. There was a car coming though.''

Merritt, the driver of the hearse, testified as follows:

''When I first observed the truck I didn't know whether it was parked or not. When we were back possibly a block and a half I observed that the truck was standing. When I was practically flush with the truck I observed the car coming from the west. After observing that, I stayed on the wrong side of the road, my purpose in staying there being to permit the on-coming car to notice that it was a funeral procession and to at least

give a few of the cars that were following a chance to get around this parked car. I stayed on the south side of the road possibly seventy-five feet after I had passed the truck. Then I just swung gently to the right. I couldn't give an idea as to the speed of the car approaching from the west. I wouldn't say that it was driving at a high rate of speed at all, because it was impossible under the conditions."

The facts here stated were recited in the petition, coupled with the following allegations of negligence:

"That on February 28, 1930, the defendants operating an auto delivery truck negligently left such truck unattended upon the north half of the paved portion of United States Highway No. 18 at a point about two miles east of Sexton, Kossuth County, Iowa; * * *

"That said collision was caused solely and alone by the negligence of the defendants in leaving their auto truck upon the paved portion of the Highway and through no negligence of this plaintiff."

The question of alleged negligence on the part of the defendant was submitted to the jury somewhat enigmatically as follows:

"If the circumstances and conditions warrant it the driver of a motor vehicle may leave same unattended on the right half of a paved highway in the daytime for a reasonable time under all the circumstances shown without providing a light burning thereon or a signal thereon or near thereto indicating the presence of said vehicle. * * * It is for you alone to say from the evidence which has been introduced upon the trial whether or not under the circumstances and conditions shown by the evidence, the defendants' driver was negligent in leaving said motor truck upon the highway as shown by the evidence. If in fact said driver was not negligent in that regard then plaintiff is not entitled to recover in this action."

It will be seen from the foregoing that the plaintiff, in his pleading, did not commit himself to any particular ground of negligence. The instructions, however, carried an intimation that the question for the jury was whether the defendant should have attached a light to the truck. In argument here, it is the

contention of appellee that the defendant should have attached warning lights, and that he should not have left the truck unattended.

The only function to be served by lights, or by an attendant, would be to warn travelers of the presence of the obstruction in the road. Such ground of negligence could not be available to a plaintiff who saw the truck for hundreds of feet in his approach thereto, and had no need of further warning. It was the duty of the defendant to remove his "dead" truck from the pavement with reasonable promptness. The defendant was engaged in that very effort at the time of the collision. No claim is made in pleading or argument that the defendant was not diligent in that regard. Nor does it appear that the "dead" truck was the proximate cause of plaintiff's injury. Though the question of proximate cause, like that of negligence, is usually one for the jury, yet it is such only when the evidence warrants doubt thereon. In this case, the evidence introduced by the plaintiff himself discloses affirmatively that the proximate cause of plaintiff's injuries was other than the alleged act of defendant.

Defendant's motion for a directed verdict at the close of the evidence ought, therefore, to have been sustained.

The judgment below is accordingly—Reversed.

FAVILLE, C. J., and MORLING, KINDIG, and GRIMM, JJ., concur.