# J. ANTHONY GEISEN v. DANIEL F. LUCE AND ANOTHER.[1]

March 11, 1932.

Nos. 28,814, 28,821.

[1]Reported in 242 N. W. 8.

*J. G. Stirn, George Hoke,* and *Nathan A. Cobb,* for appellant Daniel F. Luce.

*Tracy J. Peycke, Paul J. McGough,* and *Bradshaw Mintener,* for appellant W. J. Ferris.

*William A. Tautges, B. W. Wilder,* and *Robert J. McDonald,* for respondent.

WILSON, C. J.

Defendant Luce appealed from an order denying his motion for a new trial. Defendant Ferris appealed from an order denying his alternative motion for judgment non obstante or a new trial.

In March, 1930, Mr. Ferris with his invalid wife and two other ladies drove his three-ton Cadillac car northerly on paved trunk highway No. 3 going toward Winona. The frost was coming out of the ground, and the shoulders were soft. They had been constructed in 1929. The condenser burned out, and the car came to a stop. It was disabled. It came to a standstill substantially on the right-hand side of the pavement. Ferris testified that the car was

parked within six inches of the easterly edge of the pavement. There is some evidence that the west side of the car hung one foot west of the center line of the pavement. Being convinced by investigation and efforts that he could not repair the car so that it could be operated, Mr. Ferris caught a ride south a distance of about six miles to the nearest telephone, where he called a garage in La Crosse, his home city, for mechanics and a tow car. They came and took the Cadillac back to La Crosse for repairs.

While Mr. Ferris was thus engaged in getting assistance the Cadillac remained parked as stated, and the three ladies remained sitting in the car. In this situation an accident happened.

At about eight o'clock a. m. on the day of the accident defendant Luce left Chicago for Minneapolis. He drove a Studebaker President car and had with him two ladies and plaintiff. At about four o'clock p. m. on that day they came to where the Ferris car was so standing. Plaintiff was riding with one of the ladies in the rear seat. Luce had driven fast on the trip, those in the car cautioning him. He had been up all night the night before. He approached the parked Cadillac traveling 50 to 60 miles per hour. He says there was a Dodge car slowly moving between him and the Cadillac. While he was so traveling about 60 miles per hour he swung to the left to go by the Dodge car, but it also turned to the left to go by the standing Cadillac. It went by the Cadillac and turned back to the right-hand side of the road, but by the time the front of the Luce car was opposite the rear wheel or running board of the Cadillac, Luce was traveling at the rate of 55 to 60 miles per hour and then discovered a car about 75 feet ahead of him coming from the north at not less than 50 miles per hour. Luce claims that he could not see this oncoming car while the Dodge car was between him and it. Finding himself so confronted with the two cars approaching each other with such speed, Luce turned to the left onto the shoulder, and in a short distance his car went into the ditch and turned over. Plaintiff was injured. The occupants of the Ferris car denied the existence of the alleged slowly moving Dodge car and said that Luce went into the ditch at about 250 feet north

of the Ferris car. But we must accept the evidence most favorable to plaintiff.

■ The evidence is sufficient to support the verdict as to defendant Luce. The trial court properly instructed the jury that the driver of any vehicle upon a highway before turning from a direct line shall first see that such movement can be made in safety. 1 Mason, 1927, § 2720-17.

■ The court instructed the jury that the driver of a vehicle shall not drive to the left side of a center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety. 1 Mason, 1927, § 2720-13(a). It is claimed that this was error for the reason that the Ferris car was standing still and not "proceeding" in the same direction that Luce was traveling. It is the contention that this statute was not applicable because Ferris' car was standing and not moving. We are of the opinion that the contention is unsound, and we construe the statute as applicable to a standing car headed in the same direction the same as if it were moving.

■ The uniform highway traffic act, 1 Mason, 1927, § 2720-24(a) provides:

"No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, * * *; provided, in no event shall any person leave standing any vehicle, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, * * *.

"(c) The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such vehicle in such position."

Was it "impossible to avoid stopping and temporarily leaving such vehicle in such position?" Respondent argues that Ferris made no effort to push his car off the pavement or to move it in any way. A witness for defendant testified that it would require two men to move such car on a smooth floor. Plaintiff called a witness who testified that one man could push and move such car on a smooth floor. Whatever might be done in this respect would have a bearing only as to what could be done while the car was on the paved highway, and it seems clear from the evidence that the standing car was a considerable distance from any place where it could have been moved sufficiently to comply with the statute. It is clear that if the car had been moved a few inches to the right it would have gone into the mud and clay in the shoulder, and it could hardly be supposed that sufficient man-power could have been reasonably obtained to place the car so as to leave the required 15 feet to its left. The muddy shoulders made that impossible. The disability of the car is established. What we have to consider is the conduct of Mr. Ferris, a man 70 years of age, under the circumstances.

The words "such position" at the end of § 2720-24 (c) must not be construed as meaning that if possible for the car to have been moved at all it would be beyond the protection of the statute. "Such position" refers back to the words "on the paved or improved or main traveled portion of any highway." The provision that the car must be so disabled "that it is impossible to avoid  *  *  * temporarily leaving such vehicle in such position" cannot be applied only to cases literally. It cannot always mean that it must be "impossible" to slightly move the car in order to make subd. (c) applicable. It is difficult to imagine an automobile on the highway so disabled that it would be literally impossible for a man not to be able to move it at all. We think the legislature never intended to have such literal construction applied to this statute. We are of the opinion that the word "impossible" must be construed as meaning that the car must be disabled to the extent that it is not reasonably practical to move the car so as to leave such 15 feet

for the free passage of other cars. This construction seems to be consistent with the holdings of other courts; and under such circumstances the provision that 15 feet shall be left for free passage of other vehicles is not applicable. Menge v. Manthey, 200 Wis. 485, 227 N. W. 938; Long v. Steffen, 194 Wis. 179, 215 N. W. 892, 61 A. L. R. 1155; Kastler v. Tures, 191 Wis. 120, 210 N. W. 415; Martin v. Oregon Stages, Inc. 129 Or. 435, 277 P. 291; Dare v. Boss, 111 Or. 190, 224 P. 646; Colvin v. Auto Interurban Co. 132 Wash. 591, 232 P. 365; Billingsley v. McCormick Transfer Co. 58 N. D. 913, 228 N. W. 424.

We do not believe that we should indulge in the improbable and conjectural theory that Ferris might have solicited and obtained sufficient man-power from the traveling public to move the car a sufficient distance to where he might have placed it so as to leave the required 15 feet. He undertook, and we think reasonably so, to take care of his own trouble without bothering and delaying others. The evidence, including of course all the circumstances, does not permit a finding that it was reasonably practicable for Ferris to move his car from the paved road so as to leave 15 feet for the free passage of other vehicles. There is no evidence in the case to support the conclusion that he could have done this. We are unable to find any evidence in the record which permits the jury to say that this situation was not within the contemplation of subd. (c) as so construed by us. We are of the opinion that the record shows that the Ferris car was as a matter of law disabled within the meaning of 1 Mason, 1927, § 2720-24 (c).

■■ There is another reason why the plaintiff cannot recover; and in the consideration of this question we will assume, contrary to what we have just held, that it was reasonably practicable for Mr. Ferris to have moved his car so as to provide the required 15 feet. The only charge of negligence against Ferris is that he permitted his car to stand on the pavement in violation of the statute. It is conceded that if he had been, at the time and place, driving his car slowly he would not have been guilty of negligence. Under the circumstances this accident would have happened just the same had

the Ferris car been moving slowly. Indeed, had the Ferris car been moving it might have made the situation more dangerous. If the Ferris car while standing bore any relation to the accident, it was solely because of its being on the highway, not because it was a standing rather than a moving car. Its presence was known to all; it created no surprise; it did not obstruct a view of the traffic.

It seems apparent that even if the standing had been such as to be a violation of the statute, it would not under such circumstances as here involved be the responsible cause, because the accident would not have occurred had it not been for Luce's negligence, which was an intervening responsible cause, it not being a consequence of the "standing." In other words, upon the facts most favorably stated for plaintiff, there was no causal connection between the "standing" of the Ferris car and the accident; and without such causal connection there can be no recovery.

Luce, the principal actor in this tragedy, knew of the presence of the Ferris car. He undertook to pass it as well as the slowly moving Dodge car. The act of passing the Ferris car involved nothing not incidental to passing it while moving, except that he would be normally able to pass a standing car more quickly than if it were moving—a fact tending strongly to refute the claim that the standing Ferris car was a proximate cause of the accident. Even though the standing of a car on the highway may be unlawful, yet the wrongful standing cannot be the proximate cause of an accident unless it results from the standing. While such standing may be the occasion or condition, it is not in a legal sense a contributing proximate cause of the accident. Denson v. McDonald, 144 Minn. 252, 175 N. W. 108; Kennedy v. Hedberg, 159 Minn. 76, 198 N. W. 302; Hamilton v. Vare, 184 Minn. 580, 239 N. W. 659; Tracey v. City of Minneapolis, 185 Minn. 380, 241 N. W. 390; Balin v. Kimmelman, 295 Pa. 301, 145 A. 303; Powers v. Standard Oil Co. 98 N. J. L. 730, 119 A. 273. The "standing" of the Ferris car did not set Luce's negligence in operation nor concur therein. This accident resulted from Luce's excessive speed, his indiscretion in not having his car under control in anticipation of southbound

traffic, and his failure to appreciate the impending danger. This conduct on his part constituted negligence, which was the proximate cause of the accident.

In Powers v. Standard Oil Co. 98 N. J. L. 730, 119 A. 273, defendant's truck was parked on the wrong side of the street in violation of law. A nine-year old child ran from behind the truck in an attempt to cross the street, not seeing an automobile, operated by McGuire, which struck and fatally injured the child. The court held that the wrongful parking of the car was not the proximate cause, saying [98 N. J. L. 732]:

"It appears from the testimony of McGuire that, even if the position of the truck had been reversed, so as to entitle it legally to park on the side of the street where it was stationed, the same difficulty of an obstructed vision would have been presented. This fact indicates that the position of the truck in any event presented simply a perfectly obvious existing condition, rather than an operating unforeseen efficient cause. In such a situation the relative duties of exercising due care in traversing the street were simply accentuated, and resulted in casting upon the driver of a vehicle using the street the requirement of additional caution, and upon the wayfarer in attempting to cross the street a like precaution, and did not per se constitute negligence upon the part of the owner of the truck, so as to subject him to liability as an efficient proximate cause."

The order from which Luce appealed is affirmed. The order from which Ferris appealed is reversed with directions to enter judgment in favor of Ferris notwithstanding the verdict.