HARRY O. HARVEY, JR., Appellant, v. KNOWLES STORAGE & MOVING COMPANY, Appellee.

No. 41596.

36

OCTOBER 19, 1932.

Higbee & McEniry, for appellant.

Crofoot, Fraser, Connolly & Stryker, for appellee.

WAGNER, J.—In this action the plaintiff seeks to recover damages to person and property for alleged negligence by the defendant-corporation, through its servants, relative to a truck, which, at the time in question, was standing next to the curb on the right-

hand side of the pavement on Federal Highway Number 34, near Corning. At the close of all the evidence, the court sustained a motion for directed verdict in favor of the defendant. Said motion presents the questions as to whether the evidence is sufficient to warrant a verdict in plaintiff's favor upon the alleged grounds of negligence; whether said negligence, if any, was the proximate cause of the injury to plaintiff and the car; and whether the plaintiff was not guilty of contributory negligence. The burden is upon the plaintiff to establish that the defendant was negligent, as alleged, and that said negligence, if any, was the proximate cause of the injury, and that he, himself, was free from contributory negligence.

In Count One of the petition, the plaintiff alleges, in substance, that he was forced off the paved highway west of the city of Corning, on Highway Number 34, after dark, about 7:00 P. M. on February 17, 1931; that, on the night in question, the defendant and its agents parked a truck on the pavement without lights and that the plaintiff, while proceeding on said highway, and while the paving was blocked by said truck, in the exercise of due caution, being unable to stop, attempted to pass on the dirt shoulder, and in so doing the shoulder gave way and plaintiff's car was overturned in the ditch, causing permanent injuries to the plaintiff.

In Count Two, the plaintiff asks damages for injuries to the car, which was owned by his father, and the claim for which had been assigned to him. As grounds of negligence, he alleges:

"That the defendant stopped said motor van on the paved portion of said highway at night, well knowing that said highway was an arterial highway and bore very heavy traffic, and the defendant stopped said truck on the paved portion of said highway without displaying any lighted tail light or red light to the rear, or other warning or signal of its location, all in violation of law."

For the determination of the questions presented, we must refer to the evidence. In the consideration of the motion for a directed verdict, the appellant is entitled to have the evidence considered in the light most favorable to him. This proposition is so well established as to require no citation of authorities. But see Robertson v. Carlgren, 211 Iowa 963; Hamilton v. Wilson, (Iowa) 240 N. W. 685, (not officially reported).

The evidence discloses that defendant's truck was, on the evening of February 17, 1931, driven east on Federal Highway Num-

ber 34, in charge of two of defendant's employees. As the truck proceeded upon its journey, one of the dual tires on the right-hand wheel went flat, and almost immediately the other dual tire on said wheel blew out. The truck was stopped and the two employees began immediately to remove the tire and replace the same by another, and were so engaged at the time of the accident. The evidence is uncontradicted that the truck was standing in plain view on the top of a little knoll with the right wheels very close to the right curb. In other words, the whole of the truck was standing on the right side of the pavement about as close to the curb as it was possible to place it. The truck was faced east. The highway for a number of miles ran in a straight easterly and westerly course. To the west of the knoll where the truck was stopped for replacement of the tire, there is what is known in the record as the Bixler hill. The distance from the top of the Bixler hill to the top of the knoll where the truck was located is not definitely stated, but it is more than a quarter and less than a half mile. There is only one depression between these two locations. The truck lacked one inch of being eight feet wide and stood 11 feet high. When empty, it weighed 6 tons, and at the time in question was carrying a load of about 5 tons. The testimony is that the shoulder to the right of the truck was soft and spongy and to have driven the truck onto the shoulder would have caused it to sink and mire in the dirt. Plaintiff, at the time in question, approached the truck from the west. According to the testimony offered in behalf of the plaintiff, Powelson was traveling in the same direction ahead of the plaintiff. Powelson testified:

"As I came over the hill [the Bixler hill], I see 4 lights [lights on the truck] east of me up there on the hill [the hill or knoll where the truck was located]. As I went down this little knoll [the Bixler hill] and started up the other one for a little bit they were out of sight, and as I came on up the hill I see them again. I slowed up and drove on around. What made the lights go out of my vision I do not know. I have been back since and you could see everything as far as that is concerned. Whether or not they were turned off I do not know, but they were out of my vision a little bit. Nobody was between me and them, no car between me and that truck. I saw the red lights on the truck. I first saw the lights after I came in view of the Bixler hill. Q. Could you see the lights along the course you were traveling after that time? A. There was a place along

there about half way, I did not see the lights for a little bit. Q. And when you passed through that space? A. The lights come on again. After that I saw the lights all the time until I went around the truck."

The only other testimony relative to the omission of lights upon the defendant's truck is that of the plaintiff himself and Wallace, who was riding with him. Their testimony upon this question is practically the same. The plaintiff testified that, as he approached from the west to the place where the truck was standing, there was no red light visible, except that on the car which he was following; that before he was injured, he did not see a red light at the place where he afterwards saw the truck. The plaintiff was asked:

"What do you say to the jury if there had been lights on that truck on that hill that night could you or could you not have seen it from the Bixler hill, proceeding down the Bixler hill? A. Yes, sir, I could. Q. State whether or not you could have seen it until you came up immediately behind the car you were following. A. No, sir. Q. Could you see it as you followed the other car up the hill coming east? A. No, sir. Q. About how far is it from the top of the Bixler hill to the place where you could not see it if there had been a red light on the truck that night? A. About one-eighth of a mile."

Relative to the other propositions involved, the plaintiff testified that the lights and brakes on his car were in good condition; that he was traveling about 40 miles an hour; that by using the brakes, he could stop in about 50 feet; that his headlights when turned on showed ahead so that he could see a distance of 100 to 150 feet; that, as he turned to the left to go around the car ahead of him, it also turned to the left; that when he, the plaintiff, turned out, the car immediately ahead of him also turned to the left, "and I was so close to him when he started around the truck I put my brakes on and tried to stop and seen I could not stop without hitting the car in front of me or the truck, so I drove off on the shoulder on the north side, and that is where the shoulder gave away and I went down the bank;" that he turned out at the top of the hill, just before he reached the top of the knoll; that at that time the car immediately ahead of him was traveling along the right-hand side of the pavement; that, when he turned out to the left, the car ahead of him turned out at the same time; that, at the time he at-

tempted to pass the car ahead of him, he had got practically up to it; that he was probably 10 feet behind the car ahead of him. "Q. Going forty miles an hour and about that fast, is that right? A. I would judge that." He further testified that the car ahead of him slowed down right there to about 15 miles an hour; that he observed him drive off to the left; that he was not over 10 feet behind him; "that is the first time I saw the truck;" that he then tried to stop, applied his brakes with all the force he thought he could, and left the pavement about 10 feet behind the other car; that he drove along the shoulder until he got even with the other car; that if the car just ahead of him had not changed its course, he could and would have passed the car and the truck and gone on down the road; that he proceeded 15 feet in an easterly direction on the shoulder when the shoulder gave away and he landed in the ditch. The plaintiff further testified that as he approached the top of the knoll where the truck was standing, the car ahead of him obstructed his view and he could not see the truck or any part of it up to the time when he started to turn out. "Q. So you do not know whether or not any lights were there or not on the back of this truck? A. No, sir, I did not see no lights."

The alleged ground or grounds of negligence are herein-before quoted. It is provided in Section 5045, Code, 1931, that a "motor vehicle when in use or parked upon or immediately adjacent to the traveled portion of the highway shall also display on the rear a lamp so constructed and placed as to show a red light from the rear and throw a white light directed upon the rear registration number and render the numerals thereon visible for at least fifty feet in the direction from which the vehicle is proceeding." Section 5054, Code, 1931, provides that:

"No person shall, during any period of time from one-half hour after sunset to one-half hour before sunrise, permit a motor vehicle, under his control, to stand upon the paved portion of any hard-surfaced highway outside of the corporate limits of any incorporated city or town with the rear light extinguished unless said highway is artificially lighted, at the place where the vehicle is located, to such an extent as to clearly indicate the presence of said vehicle."

There is an exception contained in the provisions of Section 5055, Code, 1931, which, under the record in this case, has no bear-

ing upon the questions presented. A violation of, or non-compliance with, either of the foregoing statutes, without proof by the defendant of a legal excuse for non-compliance, constitutes negligence. See Kisling v. Thierman, 214 Iowa 911; Waldman v. Sanders Motor Co., 214 Iowa 1139; Albert v. Maher Bros. Transfer Co., 215 Iowa 197; Wosoba v. Kenyon, 215 Iowa 226; Holub v. Fitzgerald, 214 Iowa 857.

The question at this point is, Is the evidence sufficient to warrant a finding by the jury that there was a failure by the defendant to comply with the statutory provisions relative to lights on the rear of the truck? It will be noted that Powelson affirmatively testified that he saw the rear lights on defendant's truck while traveling the latter half of the distance between the Bixler hill and the knoll where the truck was standing. There is no testimony that the lights on the truck were not displayed at said time. This testimony was offered by the plaintiff. It will also be noted by the testimony of the plaintiff, himself, that during this portion of the journey, he, being behind the Powelson car, could not have seen the lights on the truck even had they been displayed. Under these circumstances, his negative testimony that he did not see the lights during this portion of the journey cannot be held to be sufficient to establish the claimed fact that no lights were burning upon the rear of the truck during said period of time. The failure, if any, by the defendant to display lights during the time when the plaintiff was making the first half of his journey from the Bixler hill, remote from the place where the truck was standing, could not have been the proximate cause of plaintiff's injury. Negligence must be the proximate cause of the injury, in order to warrant recovery. It is quite clear that reasonable minds could not differ upon these questions, and they therefore become questions of law for the court.

But the plaintiff contends that, although the evidence may be insufficient to constitute negligence for failure to comply with the statutory provisions, yet the fact that defendant stopped the truck on the paved portion of the highway is sufficient to constitute negligence at common law. It must be borne in mind that the truck was temporarily standing, not in a place of concealment, but at the top of a knoll; that the truck, with the load, weighed approximately eleven tons; that the uncontradicted evidence shows that, if the driver of the truck had driven off the pavement upon the shoulder , the truck would have mired in the soft, spongy soil. In

Scoville v. Clear Lake Bakery, 213 Iowa 534, relative to a similar proposition, we said:

"It was the duty of the defendant to remove his 'dead' truck from the pavement with reasonable promptness. The defendant was engaged in that very effort at the time of the collision. No claim is made in pleading or argument that the defendant was not diligent in that regard."

Likewise, in the instant case, the servants of the defendant were busily engaged at the time of the accident in the replacement of the tire, so that the truck could proceed upon its journey. Under the record, it cannot be said that the defendant was remiss in any common-law duty which it owed the plaintiff in this respect.

What we have already said is sufficient justification for the court's action in sustaining defendant's motion for a directed verdict. But, even could it be said that the question as to defendant's alleged negligence was one for the jury, then the court was justified in sustaining defendant's motion upon the ground that the evidence establishes, as a matter of law, negligence upon the part of the plaintiff, which contributed to his injury. Section 5029, Code, 1931, provides:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, *and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.*" (Writer's italics.)

A violation of, or non-compliance with, this statute, without proof of legal excuse for non-compliance, constitutes negligence. See Wosoba v. Kenyon, 215 Iowa 226. It is unnecessary to refer in detail to the evidence hereinbefore set out. However, plaintiff's own evidence establishes the fact that he was traveling at the rate of forty miles per hour when proceeding upon the highway ten feet behind the Powelson car, and while he (the plaintiff) was making the turn to the left, and while so situated and traveling at said rate of speed, the Powelson car, at the same time, also turned to the left, and he was then unable by application of the brakes to stop his car without collision with the Powelson car, and therefore turned to the shoulder on the left, which gave way and caused him to go

into the ditch. It is quite clear that he was traveling at a rate of speed in violation of the express provisions of said statute, and that it contributed to the injury. There is no evidence of legal excuse for his failure to comply therewith. Reasonable minds could not differ upon the questions as to plaintiff's negligence and whether it contributed to the injury, and these questions therefore became questions of law for the court.

The court was right in sustaining defendant's motion for a directed verdict, and the judgment is hereby affirmed.—Affirmed.

STEVENS, C. J., and FAVILLE, DE GRAFF and ALBERT, JJ., concur.