LUCILLE ALBRECHT, by ADOLPH ALBRECHT, her next Friend, Appellant, v. WATERLOO CONSTRUCTION COMPANY, Appellee.

No. 42589.

NOVEMBER 13, 1934.

H. L. Leslie and Sager & Sweet, for appellant.

McCoy & Beecher, for appellee.

KINTZINGER, J.—The accident happened on Primary road No. 218, about a mile and a half south of Waverly, about 4:30 in the afternoon of January 12, 1932. At that time, the plaintiff, who was about 9 years of age, her sister, 14, and her brother, Harley, 16, all students in the Waverly public schools, were returning to their home, in a car driven by the plaintiff's brother Harley. It was still daylight, but the weather was rainy and somewhat foggy and visibility was poor. When the car in which plaintiff was riding reached the top of a hill on the highway south of Waverly, they saw the truck in question on the right side of the highway, at the bottom of the hill. The distance from the top of the hill to the truck, as shown by plaintiff's witnesses, is between 250 and 400 feet. The driver first saw the truck from the top of the hill, at least 250 feet ahead, but did not know it was a truck until he was about 150 feet from it. At that time, the truck was in plain view on the right side of the pavement, with the left side of the road clear and unobstructed. Owing to atmospheric conditions, the driver says he thought the truck was moving, until he came to a point about 25 feet from it, when he noticed it was standing still. At that time, his car was traveling about 25 miles an hour, and he attempted to turn his car to the left to avoid a collision, but failed. The entire left half of the roadway was clear, and if plaintiff's driver had turned out in time, the collision would have been avoided. All of the plaintiff's witnesses, passing the truck shortly before, or shortly after the accident, testified that they noticed the truck was stopped when about from 100 to 200 feet away, and passed around it safely. The lights were not lit on either the truck or plaintiff's car. Although the visibility was not good on account of rain and fog, it was daylight enough to see the truck on the roadway from the top of the hill,

at least 250 feet away. The plaintiff's driver saw the object, which turned out to be the truck, all of the time from the top of the hill to the truck, a distance of at least 250 feet, and knew of its presence in the road ahead. Plaintiff's driver kept watching the truck all the way until he was about 25 feet from it. Before that, he had not turned out or applied his brakes, although he slowed the car some by taking his foot off the gas. As a result of the collision, plaintiff was seriously injured.

The negligence alleged in plaintiff's petition was: (1) Allowing the car to be stopped on the traveled portion of a primary road; (2) that it violated rule No. 7 of the traffic regulations adopted by the state highway commission; and (3) in failing to warn approaching motorists of the presence of said truck on the highway, by giving suitable warning of its position, by a guard, flags, lights, or other signal.

At the conclusion of plaintiff's evidence, defendant moved for a directed verdict, in substance upon the following grounds: (1) that the evidence failed to show any negligence on the part of the defendant as alleged in plaintiff's petition; (2) that if there was any negligence on the part of the defendant, it was not the proximate cause of the collision, or the injuries resulting therefrom; and (3) that the proximate cause of the collision and injuries was the failure of plaintiff's driver to turn to the left or stop his car within the assured clear distance ahead to avoid a collision. This motion was sustained, and plaintiff appeals.

I. One of the grounds of negligence alleged was the violation of rule No. 7, adopted by the state highway commission. This rule provides that "no vehicle shall stop on the traveled portion of any primary road except when such vehicle is disabled and unable to proceed without emergency repairs or change of tires." We have recently held in the case of Goodlove v. Logan, 217 Iowa 98, 251 N. W. 39, that the statute authorizing the highway commission to make rules did not authorize the adoption of rule No. 7 and the same was therefore invalid. Upon this question, we are controlled by the ruling in the Goodlove case, and there was no error in failing to submit the case to the jury on this ground.

II. Appellant also contends that the court erred in failing to submit the case to the jury on the ground of negligence in "stopping on the traveled portion of a primary road without giving any

warning to approaching motorists of the position of said truck by a guard, flags, lights or other signal."

There is no statute in this state prohibiting motorists from stopping on a primary road. There is a statute requiring "the operator of a motor vehicle, * * * before stopping, * * * [to] first see that there is sufficient space * * * and * * * give a visible or audible signal to the * * * drivers of vehicles following, of his intention to make such a movement, by raising and extending the hand." Section 5032. A violation of this statute, however, is not involved here because the truck had already stopped, and there is no evidence to show that the driver of the truck failed to give a signal to following vehicles of his intention so to do. The purpose of this statute is to require the driver of a forward car to give a signal of his purpose to stop, so that the driver of a following car may gauge his speed accordingly. Isaacs v. Bruce, 218 Iowa 759, loc. cit. 764, 254 N. W. 57. In the instant case, however, the truck had already stopped, and the driver of plaintiff's car actually knew of its presence on the road ahead. It was therefore his duty, under section 5029, to drive his car at such a speed that it could be stopped within the assured clear distance ahead. He admits seeing an object for a distance of 250 feet, and admits knowing that it was a truck for a distance of 150 feet. The truck was at the bottom of the decline. It was light enough for him to see the truck, and he explains the accident by saying that he believed the truck was moving, but realized that it was not moving when it was 25 feet away. The stopping of the truck, without a light or signal, had nothing whatever to do with the collision. It was his duty to regulate the speed of his car in such a manner as to avoid the collision.

It is the rule of law that stopping upon a paved highway is not in and of itself an act of negligence. 42 C. J. 1006; Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N. W. 110; Hanson v. Manning, 213 Iowa 625, loc. cit. 630, 239 N. W. 793; Harvey v. Knowles, etc., Co., 215 Iowa 35, 244 N. W. 660; Collins v. McMullin, 225 Ill. App. 430; Morton v. Mooney (Mont.) 33 P. (2d) 262; Geisen v. Luce, 185 Minn. 479, 242 N. W. 8.

"The owner of a motor vehicle has the right to stop his vehicle in a street or highway, and in the absence of any governmental prohibition or restriction to permit a motor vehicle to stand in a street or highway is not of itself illegal or negligent, even though such vehicle is entirely unattended." 42 C. J. 1006.

It is claimed that the defendant was negligent in not having any lights or giving any warning to approaching motorists of the position of the truck on the highway. The record shows that the driver of plaintiff's car knew of the presence of defendant's truck upon the highway at least 250 feet away. The accident happened about 4:30 p. m., and it was still daylight. The truck could be observed from both directions for a distance of over 250 feet. Plaintiff's driver knew that there was an object on the highway when 250 feet away, and knew that the object he saw was a truck upon the right side of the pavement when he was 150 feet away. It is, therefore, clear that the absence of lights or other warning, to advise plaintiff's driver of the presence of the truck, was immaterial.

In Scoville v. Clear Lake Bakery, supra, loc. cit. 539, we said:

"The only function to be served by lights, or by an attendant, would be to warn travelers of the presence of the obstruction in the road. Such ground of negligence could not be available to a plaintiff, who saw the truck for hundreds of feet in his approach thereto, and had no need of further warning."

In Wilkinson v. Queal Lbr. Co., 203 Iowa 476, loc. cit. 479, 212 N. W. 682, 683, we said:

"The appellee herself testifies that, long prior to her collision with the automobile, she saw and knew the car was coming toward her, and nothing that could have been done would have brought this home to her any more forcefully than what she saw. If the driver of the automobile had sounded a horn or used any other signaling device, she would have had no more knowledge than she did have by actually seeing the car approaching her."

In Morton v. Mooney (Mont.) supra, loc. cit. 264, the court said:

"There is in the record no suggestion of any law, rule, or regulation against stopping a car on the highway under consideration. While motion is the general law of the road, in the absence of any governmental prohibition or restriction, the mere stopping of an automobile on a public highway does not constitute negligence so as to render one liable for injuries flowing from collision with it by any vehicle. 1 Blashfield's Ency. of Auto Law, 556; 42 C. J. 1006. The right to stop when the occasion demands is an incident to the right to travel. Silvey v. Harm, 120 Cal. App. 561, 8 P. (2d) 570,

573. Of course, if a car becomes disabled, the motorist should employ due diligence to remove it from the highway within a reasonable time, but, in the absence of any showing of lack of diligence, the mere fact that a disabled car is standing on the highway does not constitute actionable negligence. Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N. W. 110; 42 C. J. 1041; Albertson v. Ansbacher, 102 Misc. 527, 169 N. Y. S. 188."

It might be claimed that the driver of a truck stalled on the highway could be guilty of negligence for allowing the truck to remain upon the highway for an unreasonable length of time. There is no evidence in this case, however, tending to show that such a condition existed. On the contrary, the inference to be drawn from the testimony was that some one had gone to get gas for the truck. The witness Arns, who was also returning from school, came by the scene of the accident about 4:30 p. m. and after it happened. When he reached the top of the hill, he saw the truck and the Albrecht car at the bottom of the hill. He had no lights on his car and could see both the truck and the Albrecht car for a distance of over 250 feet. He thought a man came and put gas in the truck and said, "I think one man brought the gas from the station, and put it in this * * * truck." Aside from this testimony, there was no evidence whatsoever tending to show the length of time or the reason why the truck was standing on the pavement. In order to hold a defendant liable for negligence, it must appear that the negligence claimed had some causal connection with the collision and was the direct and proximate cause thereof.

In Geisen v. Luce, 185 Minn. 479, 242 N. W. 8, loc. cit. 11, the court said:

"The only charge of negligence against Ferris is that he permitted his car to stand on the pavement in violation of the statute. * * * If the Ferris car while standing bore any relation to the accident, it was solely because of its being on the highway, not because it was a standing rather than a moving car. Its presence was known to all; it created no surprise; it did not obstruct a view of the traffic. It seems apparent that, even if the standing had been such as to be a violation of the statute, it would not under such circumstances as here involved be the responsible cause, because the accident would not have occurred had it not been for Luce's negligence which was an intervening responsible cause; it not being a

consequence of the 'standing'. In other words, upon the facts most favorably stated for plaintiff, there was no causal connection between the 'standing' of the Ferris car and the accident; and without such causal connection there can be no recovery. Luce, the principal actor in this tragedy, knew of the presence of the Ferris car. He undertook to pass it as well as the slowly moving Dodge car. The act of passing the Ferris car involved nothing not incidental to passing it while moving, except that he would be normally able to pass a standing car more quickly than if it were moving—a fact tending strongly to refute the claim that the standing Ferris car was a proximate cause of the accident. Even though the standing of a car on the highway may be unlawful, yet the wrongful standing cannot be the proximate cause of an accident unless it results from the standing. While such standing may be the occasion or condition, it is not in a legal sense a contributing proximate cause of the accident. * * * The 'standing' of the Ferris car did not set Luce's negligence in operation, nor concur therein. This accident resulted from Luce's excessive speed, his indiscretion in not having his car under control in anticipation of south-bound traffic, and his failure to appreciate the impending danger. This conduct on his part constituted negligence which was the proximate cause of the accident."

While we do not hold that it would not be negligence to stop an automobile upon a primary highway under any and all conditions, a careful study of the record in this case requires us to find that the defendant's act of stopping his truck on the highway, where it was visible to approaching motorists from both directions for a distance of over 250 feet, was not the proximate cause of the collision and injuries resulting therefrom.

III. It is also claimed the court erred in sustaining the motion for directed verdict upon the ground that the direct and proximate cause of the collision was the act of the driver of plaintiff's car in failing to drive it at such a rate of speed that it could be stopped within the assured clear distance ahead, as required by section 5029 of the Code. The consideration given the previous division of this opinion is also applicable here. The driver of plaintiff's car testified: "The accident happened about 4:30 in the afternoon. It was still light. I didn't have my lights on * * * because I was able to see all right ahead without lights." His car was about 150 feet from the object when he noticed it was a truck. He testi-

fied that he watched it all the time he was approaching the truck while driving down the hill. He also says, "The fog didn't prevent me from seeing when I was 200 feet away, and I kept watching it * * * until I was 25 feet from * * * the truck, when I turned to the left." The evidence shows without conflict that the truck at the bottom of the hill could be and was seen by all motorists, passing by shortly before and shortly after the accident, for a distance of at least 250 feet. Some of the passing motorists had their lights on and some did not. So we have here the situation of a truck standing on the right half of the pavement, with a clear and unobstructed road on the left amply sufficient to enable plaintiff's car to pass around the truck in safety. In view of the fact that the driver of plaintiff's car actually knew of the truck's presence on the highway more than 200 feet ahead, atmospheric conditions would not relieve him from the duty of having his car under control and driving it at such a speed that a collision would not occur. Even though visibility had been lost entirely, by reason of fog and rain on the windshield, and the presence of the car ahead was not known to the driver, the "loss of visibility, and the venture of the driver to proceed without it, were clearly the proximate cause of this accident." Greenland v. City of Des Moines, 206 Iowa 1298, loc. cit. 1301, 221 N. W. 953, 954.

This is unlike cases where the driver of a following car had no knowledge of the presence of a car ahead, and where he was prevented from seeing it because of diverting circumstances in time to avoid a collision. It is our conclusion that the driver of plaintiff's car failed to have his car under control or drive it at such a rate of speed that would permit him to bring it to a stop within the assured clear distance ahead. With knowledge of the truck's presence on the pavement at least 250 feet ahead, he failed to slacken the speed of his car, or turn to the left in time to avoid the collision. It is clear from the record in this case that the driver of plaintiff's car was guilty of negligence in failing to comply with the assured clear distance ahead statute, and that his negligence was the direct and proximate cause of the collision. This conclusion is supported by the following cases: Ferguson v. City of Des Moines, 197 Iowa 689, loc. cit. 693, 198 N. W. 40; Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N. W. 110; Dennier v. Johnson, 214 Iowa 770, 240 N. W. 745; Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953; Isaacs v. Bruce, 218 Iowa 759, 254

N. W. 57; Bruening v. Miller, 57 S. D. 58, 230 N. W. 754; Island Express Co. v. Frederick (Del. Sup.) 171 A. 181; Geisen v. Luce, 185 Minn. 479, 242 N. W. 8.

In view of the foregoing conclusion, a consideration of other matters presented is unnecessary. For the reasons hereinabove set out, the judgment of the lower court must be and is affirmed.

MITCHELL, C. J., and STEVENS, ANDERSON, and CLAUSSEN, JJ., concur.