ETHEL I. GOODLOVE, Administratrix, Appellee, v. MARVIN LOGAN, Appellant.

No. 42887.

JUNE 21, 1935.

Shannon B. Charlton, for appellant.

Donnelly, Lynch, Anderson & Lynch, for appellee.

HAMILTON, J.—This is the second time this matter has been before this court. The first trial is reported in 217 Iowa, at page 98, 251 N. W. 39. The case was reversed on a constitutional question. The former opinion recites the necessary facts, and there is no occasion for repeating the same herein. The only question before this court at this time is: Was the injured party guilty of contributory negligence as a matter of law? The defendant raised this question in a motion to direct a verdict at the close of plaintiff's evidence, and also at the close of all the evidence, and in a requested instruction. The lower court overruled the motions and refused the proffered instruction, and the appellant cites this action of the court as error. It is the contention of the appellee that the same matter was presented to the court at the former trial and that the opinion of this court in the prior case is the law of this case and determines every question presented by appellant adversely to him, that the facts are the same, and that the same legal question was raised at the former trial.

We have given careful consideration to this contention, and, while it is a very close question, the court is not satisfied that the evidence at the hearing as presented in this appeal is the same in all particulars as that offered and received at the previous trial. It is stated in the former opinion of this court that the appellee offered no evidence other than Exhibit No. 5. Exhibit No. 5 consisted of Rule No. 7 of the rules, regulations, and instructions relative to primary roads and traffic on primary roads, promulgated by the Iowa state highway commission. The motion to direct a verdict at the former trial was based on practically the same grounds as those contained in the motions for directed verdict submitted to the court at this time, with the additional ground that the plaintiff was guilty of contributory negligence in violating said Rule No. 7, and was therefore guilty of negligence as a matter of law. The motion was sustained upon this one ground. There is nothing in the record to show that there was any ruling by the court as to any other grounds of the motion. The necessary result, of course, would follow that the motion was overruled as to all other grounds. The other grounds of the motion are not set out or in any manner referred to in the former opinion of this court, and, as the case must be affirmed on other grounds, we do not find it necessary to determine the question as to whether or not the former opinion is the law of this case.

The evidence is practically without dispute as to the following facts: The deceased, with his wife and eleven-year-old son, left his home about 8 o'clock on the night of December 21, 1931, in a model A Ford pickup. They proceeded in a northerly direction from their home about a half mile, then turned west for about a half mile to where the road intersects primary road No. 13, running north and south. The Ford car was equipped with chains; the dirt roads being very muddy. They traveled north on the paved highway, No. 13, about 120 rods, when the chains on the car of the deceased began clanking on the fenders, and he stopped his car on the paving for the purpose of removing the chains. The east side of the car was at the east or right edge of the paving. The shoulder along the east side of the paving was about six feet wide, black dirt, and on the night of the accident was wet and muddy and slippery. There had been some rainy weather, and the water from the paving had splashed out upon the shoulder, making it a very undesirable place to remove chains. The deceased was driving. He got out of his car on the left side, went around to the left rear wheel and unhooked the chain, then came around to the right, walked out upon the shoulder, spoke to his wife, who had seated herself behind the wheel, asking her to move the car forward so he could get at the chain on the right rear wheel. The wife testified that at this time she looked back through the window in the cab, saw a car coming, saw her husband standing directly at the right side of the car. Almost instantly thereafter the defendant's car, proceeding in the same direction as the car of the deceased, attempting to pass the Ford car, ran out on the shoulder to the right, striking the rear right fender and wheel of the Ford, knocking the deceased down and dragging him under the defendant's car, which proceeded on northeasterly into the ditch at the right of the shoulder for a distance of about 90 feet from the point where the deceased was struck. The deceased was found beneath the defendant's car, back of the front axle. His arms and legs were broken, both knees were broken, and his chest was crushed. A doctor was sent for, and the injured man was taken to a hospital, where he died of injuries at 11 o'clock that night.

There was evidence from which the jury could have found that the red tail light, as well as the yellow stop light on the Ford car, at the time of the accident was lighted, and that, while the night was foggy, the tail light could be seen at a distance of from

30 to 35 rods; that decedent's car was only stopped for a period of from two to five minutes. The paving is 18 feet wide at the point of the accident, with a six-foot dirt shoulder on each side. The shoulders had been seeded to rye, but had failed to make much of a growth. There was ample room on the paving, on the left of the Ford car, for defendant's car to pass. The moon was shining, the night was foggy, but it was not raining, and it was not very dark. There was no mist or water forming on the windshield. Several witnesses testified that they could see the tail light on the deceased's car for a distance of from 30 to 35 rods on the night of the accident. The vision along this highway was unobstructed; the ground was practically level for a distance of a mile and a quarter south of the scene of the accident and a distance of half a mile to the north. The headlights on defendant's car were burning, and there was nothing to obscure the vision of the defendant, except the condition of the weather. There was evidence to the effect that there had been some hauling from the fields, over the dirt road, on to the paving, and that there was considerable mud on the paving at the scene of the accident, and for some rods south of the scene of the accident, at some places obliterating the black marks in the center of the paving and obliterating the edge of the paving where it came in contact with the shoulder. The defendant had passed another car about a half-mile back of the scene of the accident, going in the same direction. This car was being driven by one Morehouse. Morehouse testified that the defendant's car as it passed him was traveling possibly 50 miles an hour, and that he was driving his own car between 30 and 35 miles an hour. The evidence shows that the defendant had proceeded on to the scene of the accident, had got out of his car after the accident, had come up to the car of the deceased and inquired of Mrs. Goodlove if there was a man standing by her car, and they were proceeding back toward the defendant's car when the Morehouse car drove by and stopped to see what was wrong. If the Morehouse car was traveling 30 to 35 miles an hour, then, of course, defendant was traveling considerably faster.

There is no contention but what the defendant was guilty of negligence. The appellant's only contention is that the plaintiff cannot recover because of contributory negligence of the deceased, and that the deceased was guilty of contributory negligence as a matter of law, in stopping his car on the paving to remove the

chains. This court said in the case of Albrecht v. Waterloo Const. Co., 218 Iowa 1205, 1208, 257 N. W. 183, 184:

"It is the rule of law that stopping upon a paved highway is not in and of itself an act of negligence. 42 C. J. 1006; Scoville v. Clear Lake Bakery, 213 Iowa 534, 239 N. W. 110; Hanson v. Manning, 213 Iowa 625, loc. cit. 630, 239 N. W. 793; Harvey v. Knowles, etc. Co., 215 Iowa 35, 244 N. W. 660; Collins v. McMullin, 225 Ill. App. 430; Morton v. Mooney [97 Mont. 1] 33 P. (2d) 262; Geisen v. Luce, 185 Minn. 479, 242 N. W. 8.

" 'The owner of a motor vehicle has the right to stop his vehicle in a street or highway, and in the absence of any governmental prohibition or restriction to permit a motor vehicle to stand in a street or highway is not of itself illegal or negligent, even though such vehicle is entirely unattended.' 42 C. J. 1006."

And, after quoting from other jurisdictions, Justice Kintzinger, in his opinion in this case, finally says:

"While we do not hold that it would not be negligence to stop an automobile upon a primary highway under any and all conditions, a careful study of the record in this case requires us to find that the defendant's act of stopping his truck on the highway, where it was visible to approaching motorists from both directions for a distance of over 250 feet, was not the proximate cause of the collision and injuries resulting therefrom."

It is strenuously contended by appellant that the deceased was operating his car in violation of the statutory provision found in Code, section 5029, which provides:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway," etc.,

and appellant attempts to bring this case within the language of the dissenting opinion in the case of Wosoba v. Kenyon, 215 Iowa 226, at page 237, 243 N. W. 569. Manifestly, this rule can have no application to one who has stopped his car upon the highway for a lawful purpose, as had the deceased in this case. To lay down such a rule would require in every instance the driver of a motor vehicle to remove his car entirely from the paved portion of the

highway before bringing the same to a stop. Our courts have gone far enough along this line of requiring clearance of traffic along arterial highways for the benefit of those who are using the same and who are inclined to drive their cars at a high rate of speed, and we are not inclined to extend the.rule further. There was no satisfactory or convenient place suitable to stop the car of the deceased, for the purpose of removing the chains, except to stop the same on the paved portion of the highway. It was only stopped from two to five minutes. The deceased had a right to assume that defendant would observe the statutory requirements of turning to the left in passing, and of so operating his car as to be able to bring same to a stop within the assured clear distance ahead. To say that, under the circumstances, the deceased was guilty of contributory negligence as a matter of law, would be to go beyond the prior holdings of this court, and beyond the rule supported by the great weight of authority. It was for the jury to determine under all the facts and circumstances—taking into consideration the condition of the weather, the fact that one of the chains apparently was loose, the fact that the shoulders were muddy and soft and the side roads muddy, and all the other facts and circumstances surrounding the accident—the question of the contributory negligence, if any, of the decedent. The lower court properly submitted the question of contributory negligence to the jury. We find no error in the record. The case is therefore hereby affirmed.— Affirmed.

All the Justices concur.