FLORA BALDWIN, Appellant, v. HENRY RUSBULT, Appellee.

No. 43045.

NOVEMBER 12, 1935.

C. J. Lambert, for appellant.

S. W. Livingston, for appellee.

HAMILTON, J.—The accident or collision out of which the injury and consequent damages arose in this case occurred in

this wise: The plaintiff was proceeding in a northerly or north-easterly direction along paved highway No. 149, traveling on the right side or half of the pavement. The road at this point is level. The sky was partly cloudy, but it was a fairly clear day. It was 11 o'clock a. m. The accident occurred about one mile southwest of the town of North English, Iowa. When plaintiff first observed defendant's car, he was about one-eighth of a mile ahead of her, his car headed in the same general direction that she was traveling, and, as she supposed, traveling in the same direction. As a matter of fact, he had lost his radiator cap and was slowly backing on the right-hand half of the pavement toward plaintiff's car in an effort to find the lost radiator cap. Plaintiff did not see him stop his car or reverse his speed or change his course or direction of travel, and proceeded to travel directly behind him, slowly gaining on him.

The road was straight at the point of the collision, and plaintiff testified that she could not tell until she turned out to go around him that he was backing; that as soon as she turned out to pass his car she got the angle of the car and saw that he was backing, and that she tried to get out of the way, to get over to the left as far as she could; that she was pretty much over the black line when the collision occurred; that she knew defendant's car was there in front of her and that she was gaining on him all the time; that when she was close enough to turn out and go around that she turned out, just as she always did, in plenty of time, that she never took chances; that she would not say how close she was to defendant's car when she began to turn, but in her best judgment she was four or five car lengths back. She had time to pull left far enough so that his left back wheel struck her right front wheel and fender, jamming the running board back into the back right tire and toward the car. One witness said: ''It looked like the running board had been jammed straight back and in toward the car.'' Plaintiff gave her version of how it happened, but the physical facts show that as she pulled to the left, the two cars going in opposite directions, the gap between them closed, not quite, but almost instantly. The estimated speed was 25 miles per hour for her car, and 15 for his. The defendant gave no signal or warning and displayed no red light. At the close of the plaintiff's evidence the court sustained a motion to direct a verdict for the defendant, and plaintiff appeals.

That the defendant was negligent on his part is not seriously questioned, the only matter argued being the question of plaintiff's freedom from contributory negligence; it being the contention of defendant that plaintiff violated the clear distance ahead statute, that she was driving at an excessive rate of speed under the circumstances surrounding her immediately before the accident; that she failed to keep a proper lookout and either did see, or could have seen, the defendant's car in time to turn out and avoid the collision, and that she violated the last clear chance doctrine. It will thus be seen that we have here an anomalous situation.

The only word we have from the defendant's lips is: "I was backing, looking for my radiator cap and did not see you." There was no red light or other signal or device to indicate that the car was stopped or backing, nothing, except, of course, the movements of the car. He seemed utterly oblivious of the fact that the world has moved out of and beyond the "horse and buggy days" and that there were other inhabitants on the globe who might want to use that highway, and that at that moment one of them might be coming along, not at 25, but at 60 or 70 miles an hour, right behind him.

In passing upon this question it is necessary that we put upon plaintiff's version of this matter the most favorable interpretation of which it is reasonably susceptible. This is the rule. Holderman, Adm'x. v. Witmer, 166 Iowa 406, 409, 147 N. W. 926, 928. If we do this, we are compelled to find that she did not observe that this car had stopped, changed to reverse gear, and was moving backward, until she had turned out to go around it. She was then too close to get out of the way of a car on the move in reverse, but in plenty of time to pass a car moving forward slowly, or one that had stopped. It therefore resolves itself into this: Was she bound to see what could have been seen if she were looking, namely, the movements of the car ahead of her, and, having seen, was she bound at her peril to dodge the same and avoid the collision? This court said in the case of Smith v. Spirek, 196 Iowa 1328, 1333, 195 N. W. 736, 739:

"When the defendant saw, or with reasonable diligence could have seen, the decedent in time to so operate his car to avoid the accident, it became his duty to so act. * * * The driver

had ample space to pass the decedent on the highway so as to avoid striking him.''

There an individual who was riding on the running board of the car ahead of the defendant's car suddenly stepped off into the path of the approaching car of the defendant and was struck.

We held in the case of Holderman, Adm'x. v. Witmer, supra, a case where a pedestrian was struck by an automobile at a street crossing and the driver claimed that he did not see him until the moment he struck him, that:

''The duty to look implied the duty to see what was in plain view, unless some reasonable explanation is presented for a failure to see. The reasonableness of such an explanation is clearly a question for the jury.''

The trial court directed a verdict in favor of the defendant which this court reversed. The concluding paragraph in the opinion is:

''It is sufficient to say briefly that, the evidence being sufficient to go to the jury on the question of Larson's [the driver of the car] negligence, and no conclusive contributory negligence being disclosed, the case was clearly for the jury.''

What would be the reaction of an ordinary person under the same or similar circumstances? This was an unusual situation. The truth of this is self-evident. Among the hundreds of accident and damage suits arising out of automobile collisions, counsel on neither side of this case has been able to produce a parallel case. We have here a motor vehicle headed in one direction being propelled in the opposite direction. How far he had traveled or where he came from is not revealed by the record. It is the law of the road that, when vehicles approaching each other meet, they are required to pass to the right. Section 5020, Code 1931. No doubt the legislature had in mind vehicles being propelled in the regular and ordinary course of travel. Another statute, section 5032, Code 1931, provides:

''The operator of a motor vehicle shall, before stopping, turning, or changing the course of such vehicle, first see that there is sufficient space to make such movement in safety and shall give a visible or audible signal to the crossing officer, if there be such, or to the drivers of vehicles following, of his in-

tention to make such a movement, by raising and extending the hand or by a proper signal or device indicating with it the direction in which he wishes to turn.''

Both cars were over on the right-hand side of the black line on the pavement. The plaintiff was where she had a right to be. As this car backed toward her, what was her duty, acting as an ordinary prudent person under the circumstances? Must she turn to the right? There was no evidence to show that there was room for her to turn to the right. Should she turn to the left? How was she to know that at the last minute the defendant would not decide that it was his duty to obey the mandates of section 5020 and turn to the right? Should she stop? That would not avoid the accident. He was coming toward her and did not see her. If the defendant's car had been standing still and the accident had happened as it did, under the rule of Albrecht v. Waterloo Const. Co., 218 Iowa 1205, 257 N. W. 183, and cases therein cited, the plaintiff would have been guilty of negligence in not turning to the left and avoiding the collision. In the Albrecht case, the driver of the car saw the truck standing on the paving when he was 150 feet away, but did not observe until he was within 25 feet of the truck that it was not moving forward. Here the plaintiff did not observe that the car was not moving forward and did not observe that it was moving backwards until she was so close to the rear end of it that she was unable to pull out and avoid the collision. Must we carry the rule laid down in the Albrecht case to the extent that she was bound as a matter of law to see at her peril that this car was moving in reverse?

We held in Luther v. Jones, 220 Iowa 95, 261 N. W. 817, where a truck ran into a slowly moving car ahead of it, and it was the claim of the owner of the truck that the cause of the injury was the sudden slowing down of the car ahead of him, that this presented a jury question. In that case the car ahead was compelled to slow down as it approached a street crossing, and other cars coming from the opposite direction prevented him from passing a car immediately in front of him. We held there that the driver of the truck in the rear was bound to take notice of this situation and to govern his speed accordingly.

If there is no specific law of the road covering this particular case, the rules of the common law apply, and each person

must use reasonable care to avoid a collision such as the place and circumstances require. Smith v. Spirek, supra. Plaintiff had a right to assume that before the defendant would undertake to change the course of his car and go in the opposite direction from that in which he was headed, he would at least, by some signal required by statute, indicate that he was changing his direction. This he failed to do. There was nothing to put her on her guard, except the movement of the car itself. If she is required, as a matter of law, to see what was plainly apparent, that he was moving backward, how would the failure to give a warning signal avail her anything? As a matter of law, was plaintiff required, under the doctrine of the last clear chance, acting as an ordinary, reasonable, and prudent person, under the circumstances, to discover the peril of the defendant, namely, that he was backing without seeing her, and was she required to so discover his peril in time to avoid the accident? There is the element of uncertainty as to what the defendant might do, even though the plaintiff be required to see that he was backing. Faced with this unusual situation, was plaintiff, as a matter of law, required to so operate her car as to avoid the collision?

It is a close question, we admit, under our prior holdings. But this case presents a little different situation, and we are inclined to think that it was a matter for the determination of a jury. We find no case, where the facts are similar, holding to the contrary and the appellant has cited us to none. The unusual situation of one going in the opposite direction to that in which one from the rear would naturally suppose him to be traveling, coupled with the slow backward movement of his car, together with the fair and reasonable assumption to be indulged in that plaintiff had a right to assume that he would be operating his car in a reasonable and lawful manner upon the highway, and that before changing his course he would by some method give warning and continue to do so as he proceeded traveling in reverse movement, together with all the other facts and circumstances surrounding the case, presents, as we think, a jury question.

Therefore, it necessarily follows that the judgment of the trial court must be, and it is hereby, reversed.—Reversed.

KINTZINGER, C. J., and DONEGAN, ALBERT, PARSONS, ANDERSON, POWERS, MITCHELL, and RICHARDS, JJ., concur.