C. W. Anderson, Appellee, v. L. E. Kist, Appellant.

No. 45303.

NOVEMBER 19, 1940.

REHEARING DENIED MARCH 14, 1941.

G. O. Blake and Burnstedt, Hemingway & Hemingway, for appellee.

Everett McGrath and Putnam, Putnam, Fillmore & Putnam, for appellant.

STIGER, J.—About 6 o'clock in the evening of December 24, 1937, defendant's semitrailer was being driven north on highway No. 69 in Hamilton county by William Cole. Eugene Kist was the operator of the truck and Cole was his assistant. The truck was about 35 feet long and consisted of a tractor and trailer. William Cole gave the following description of the truck: "The build of the tractor is on the same line as a big truck except it is the motive power. The tractor part has a frame and a chassis. The difference in this particular equipment that we were driving is that the trailer is really a separate chassis, and the front end of it is hooked on to the tractor rather than

the ordinary truck where the body is back of the engine and the cab."

About two miles north of the town of Jewell highway No. 69 intersects with an east and west graveled road. There is a schoolhouse adjacent to the northwest corner of the intersection. As Cole was driving the truck north on the east side of highway No. 69 across the intersection, he observed an automobile in the ditch a short distance north of the intersection on the west side of the highway. He stopped the truck about 50 feet north of the intersection. After telling the occupants of the car he would pull it out of the ditch, Eugene Kist backed the truck south to the intersection, then drove northwest about 60 feet, crossing over to the west side of highway No. 69, stopped the truck, then backed south on the west side of highway No. 69 and stopped the truck close to the car in the ditch. When the truck stopped, the tractor was on the west side of highway No. 69 facing in a northeasterly direction and the trailer was immediately behind the tractor facing somewhat in a more northeasterly direction than the tractor, the rear of the trailer being out on the west shoulder of the highway a distance of about three feet from the edge of the pavement. Very soon after the truck finally stopped on the west side of the pavement as above described plaintiff's car collided with the trailer on the west shoulder. When about 65 feet north of the truck plaintiff had driven out on the west shoulder and then drove south thereon to avoid hitting the truck.

Defendant's main assignment of error is that the court erred in overruling his motion for directed verdict. In presenting this issue on appeal defendant does not claim that he was not negligent; he contends only that plaintiff was guilty of contributory negligence as a matter of law. In determining this question the evidence most favorable to plaintiff must be accepted.

We will now refer to plaintiff's testimony. He testified:

"I first noticed the lights of the truck as I drove over a rise in the pavement about a quarter of a mile north of the schoolhouse which is near the intersection. The highway was level from this rise in the pavement south to the intersection. The pavement was dry but the shoulder was covered with sleet.

I was traveling about 45 miles per hour when I first noticed the lights. I continued south on the west side of the highway, watching the lights which, apparently, were not on my side of the pavement. They appeared to be on the east side of the road. I saw the lights coming and thought nothing of it any more than meeting any other lights on any other car until I got down near them. When I was about 500 feet north of the intersection I slowed down to about 35 miles per hour and dimmed my lights. I got no response when I dimmed my lights and I still thought they were on the east side of the road. The black lines from the lights shown in such a way I couldn't tell but what they were on their own side and when I got so close I couldn't stop, or felt that I couldn't, I immediately steered the car to the shoulder which, by instinct, I suppose to the right. I kept looking down the road all the time I was driving south. As I was going south on the pavement the lights on the truck looked just like any lights coming—meeting any lights. They looked that way all the way until I got to the truck. I thought it was a truck because the lights were wider apart and bigger than passenger cars generally have. Up to the time I was about 65 feet north of the truck, I believed it was moving, and on the east side of the road. I applied my brakes and pulled my car to the right when about 65 feet north of the truck. I did not put my brakes on hard because I made the turn to the right at the same time and knew it was icy on the shoulder. When I was 65 feet north of the truck I could have stopped my car within 70 to 80 feet. I applied my brakes and pulled my car to the right when about 65 feet north of the truck. I could not see beyond the front lights of the truck. I was blinded as to seeing anything beyond the front end of the tractor. My car was entirely on the west shoulder when I passed the truck. I was going about 25 miles per hour when I passed the front end of the truck and hit the trailer. When I passed the truck and hit the trailer I was driving on the west shoulder. It was the back of the combination that I hit on the shoulder.''

Plaintiff was not the only traveler approaching from the north who thought the truck was on the east side of the highway and moving. The headlights of the truck, shining in a north-

easterly direction, gave the impression the truck was on the east side of the highway to such a traveler.

C. R. Anderson, who approached the truck from the north and followed the identical route taken by plaintiff in avoiding a collision with the front end of the truck, testified:

"As I was coming south approaching these lights I didn't notice whether they were moving or not. I presumed that they were moving. I was possibly 75 to 100 feet from it before I knew there was something wrong. The lights appeared to be on the east side. I was some 75 to 100 feet before I observed that they were not on the east side. I then observed another car coming from the south. I knew they were on the west side then."

Kist testified that "another car (C. R. Anderson's) came down the same identical place Dr. Anderson's did while we were there."

Dr. Harris testified:

"I first observed lights at the intersection by the school-house as I was driving down the highway when I was about a half a mile north of the intersection. I noticed the car's head-lights. I couldn't tell when I first saw them whether they were moving or not. I was somewhere from 75 to 100 feet from the lights before I realized they were standing still and realized the lights were on my side of the road."

Eugene Kist testified that after he stopped the truck he shut the cab door and reached down to get one of the fusees to set out in front of the truck. He further testified:

"As I reached down, it took a few seconds to get it out of the holder, I got the fusee and raised up and just started to open the door of the truck to get out and I noticed a pair of headlights right in front of the tractor coming on the west side of it and then I heard a loud crash."

Cole testified that after the truck stopped he stepped behind the trailer and after a few seconds he heard the roar and moan of a motor, stepped on the west shoulder and saw plain-

tiff's car about 10 feet in front of the tractor and on the west shoulder.

The jury could have found that the accident occurred a few seconds after the truck stopped and that it was maneuvering on the highway while plaintiff was approaching from the north. Plaintiff states that it appeared to be moving until he was within 65 feet north of it.

We are of the opinion the court was right in submitting the question of contributory negligence to the jury.

I. Appellant's first point is that plaintiff was contributorily negligent because he voluntarily and heedlessly thrust himself into obvious danger. His contention is that plaintiff drove directly toward the truck for a distance of a quarter of a mile without paying any attention to it. Appellant states:

''When plaintiff was 65 feet from the truck and was blinded by the headlights of the truck and could see nothing beyond them, he drove onto the right shoulder without even so much as a glance ahead to determine whether or not the way was clear. He thus thrust himself into a zone of obvious danger. Plaintiff did not exercise any care but proceeded blindly into obvious certain danger.''

This statement ignores plaintiff's testimony. Plaintiff testified the truck was moving; that it appeared to be on the east side of the pavement. He slowed down 500 feet from the intersection to 35 miles an hour and dimmed his lights. He still thought the truck was moving. He continuously watched the pavement and truck and when he came to a place 65 feet north of the truck he realized it was directly in front of him and not moving. Plaintiff had his car under such control and was traveling at a rate of speed that enabled him to avoid hitting the truck by driving past it on the west shoulder. True, he hit the trailer, but it was not discernible until plaintiff was past the front lights of the truck. Plaintiff did not know and had no reason to anticipate that appellant had jackknifed his trailer across the shoulder. There were no fusees or flares to warn plaintiff the truck was standing still.

Under the circumstances, it was for the jury to determine whether plaintiff's conduct was in accord with ordinary prudence and due care under all the circumstances.

Appellant cites Engel v. Nelson, 220 Iowa 771, 263 N. W. 505; Goodlove v. Logan, 219 Iowa 1380, 261 N. W. 496; Parrack v. McGaffey, 217 Iowa 368, 251 N. W. 871; Davis v. Hoskinson, 228 Iowa 193, 290 N. W. 497; Albrecht v. Waterloo Construction Company, 218 Iowa 1205, 257 N. W. 183. Because of different fact situations the cited cases do not control the decision in this case.

As hereafter stated, plaintiff in approaching the truck had the right under section 5023.01 to assume that if it were on the west side of the highway it would yield one half of the traveled way until he knew or should have known otherwise. It cannot be said under this record that as a matter of law plaintiff voluntarily and heedlessly thrust himself into a known and obvious danger.

II. In view of plaintiff's evidence, appellant's claim that plaintiff was contributorily negligent as a matter of law because he failed to keep a proper lookout cannot be sustained.

III. Appellant's next proposition is that plaintiff failed to observe the assured clear distance ahead statute. The material portion of section 5023.01, 1939 Code, reads:

"5023.01. * * * and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

The trailer was a separate chassis, the front end being hooked onto the tractor. Plaintiff was able to see the front end of the tractor from the time he came over the rise in the road but was unable to see objects beyond the tractor because of its headlights until he passed the front end. We have many times stated that the words "assured clear distance ahead" as used in the statute mean that the operator shall at all times be able to stop his car within the distance discernible objects may be seen ahead of it. The discernible object ahead of plaintiff was the tractor which was on the pavement. The trailer was not discernible to plaintiff. If the trailer had been on the pavement back of the tractor there would have been no collision, as plaintiff was driving in a manner that would have enabled him to pass the outfit on the shoulder.

Assuming the trailer was a discernible object, plaintiff had

the right to assume until he knew or should have known otherwise that if the truck were on the west side of the highway it would yield one half of the traveled way to him. No fusees or flares indicated to plaintiff that the truck was stopped on the highway. Plaintiff's assured clear distance must be determined in the light of his testimony that the truck appeared to be moving and the permissible assumption provided by the statute. Plaintiff testified that he did not discover the truck was stationary and directly in front of him until he was 65 feet north of it. The length of time the truck stopped before the collision, the time when plaintiff should have discovered the true situation, whether plaintiff's conduct under all the facts and circumstances violated section 5023.01, 1939 Code, was for the jury.

IV. Another point urged by appellant is that his motion for a directed verdict should have been sustained because plaintiff passed the truck on the right and drove upon the shoulder in violation of section 5024.06, 1939 Code, which section reads:

"5024.06 Overtaking on the right. The driver of a vehicle may overtake and pass upon the right of another vehicle which is making or about to make a left turn.

"The driver of a vehicle may overtake and, allowing sufficient clearance, pass another vehicle proceeding in the same direction either upon the left or upon the right on a roadway with unobstructed pavement of sufficient width for four or more lines of moving traffic when such movement can be made in safety. *No person shall drive off the pavement or upon the shoulder of the roadway in overtaking or passing on the right.*" (Italics supplied.)

Section 5024.03, 1939 Code; reads in part:

"5024.03 Overtaking a vehicle. The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, * * *."

Section 5024.06 is one of the rules referred to in section 5024.03. See sections 5024.03–5024.08, inclusive, 1939 Code.

The italicized portion of section 5024.06 refers only to cars proceeding in the same direction and means that a person exer-

cising his privilege of passing a car on the right under the circumstances defined by the preceding sentence must keep on the pavement. This statute has no application to the facts in this case.

V. Another proposition is that plaintiff was contributorily negligent because he drove at a high and excessive rate of speed. Plaintiff testified he reduced his speed from 45 to 35 miles per hour 500 feet north of the place of the accident and further reduced his speed so that when he struck the trailer he was driving from 25 to 30 miles per hour. We cannot agree with appellant's contention that the physical facts necessarily refute plaintiff's testimony and establish excessive speed. This issue was for the jury.

VI. Appellant's next proposition is that the court erred in submitting to the jury the issue of sudden emergency. Appellant's argument is that there is no evidence of an emergency. He states:

"The plaintiff based his claim of emergency upon the absence of fusees or flares upon the highway to warn him of the presence of the truck upon the highway in sufficient time to permit him to avoid a collision with it. But his own testimony shows that he knew of its presence and appreciated that it was a truck because of the size and position of the lights, when he was a quarter of a mile away from it. Thus he was warned; and in the exercise of ordinary care, should have been able to discover its position and the fact that it was not moving, long before there was danger of a collision. Instead, the plaintiff drove steadily toward it at a high rate of speed paying no particular attention until he was 65 feet from it.

"In the case at bar, it is clear that there was no sudden appearance of the truck in the pathway of the plaintiff. The truck was there all of the time while the plaintiff was traveling a quarter of a mile toward it after he knew it was there."

The fault in appellant's position is that he does not give any consideration to plaintiff's testimony. Plaintiff testified the truck was moving and appeared to be on the east side of the highway. Appellant did not place flares on the road as required by section 5034.57 to warn travelers that the truck was stopped

on the highway. It is quite apparent from the record that the headlights on the truck, facing in a northeasterly direction, gave the impression to the travelers from the north that the truck was on the east side of the road.

Plaintiff's conduct in driving south until he was 65 feet away from the truck must be appraised in the light of his testimony and the permissible assumption that appellant would yield one half of the traveled way. Appellant was flagrantly negligent. If plaintiff could not have reasonably discovered the facts until he was approximately 65 feet from the truck it is apparent he was suddenly confronted with an emergency not of his own making.

Appellant complains of the court's refusal to give requested instructions. As the substance of the requested instructions was contained in the instructions given by the court, there is no merit to the complaint.—Affirmed.

RICHARDS, C. J., and BLISS, SAGER, OLIVER, and HALE, JJ., concur.