DiFederico, Exr., Appellant, v. Reed, Appellee.

138

(No. 9261—Decided April 15, 1969.)

*Messrs. Williams, Murray, Deeg & Ketcham* and *Mr. James D. Booker,* for appellant.

*Messrs. Power, Griffith, Jones & Bell, Mr. S. Noel Melvin* and *Mr. Stanley S. Smith,* for appellee.

Troop, J.  Shortly after midnight on February 10, 1965, Mrs. Anne DiFederico, plaintiff-appellant's decedent, and her husband, Julio DiFederico, plaintiff-appellant and executor of his wife's estate, left Stouffer's University Inn where they were guests and walked north on the area west of the edge of Olentangy River Road, crossed the road at Riverview Drive and continued north along the road at or near the east edge thereof. A short distance north of Riverview Drive, Mrs. DiFederico, who was walking to the left of her husband, was struck from the rear by an automobile driven by defendant, appellee herein, Donald M. Reed, and died of the injuries sustained in the accident. Olentangy River Road is a 4-lane divided highway carrying two lanes north, each 11 feet wide, and two lanes south, each 11 feet wide. There is a grass median strip 8 feet wide. The paved road has white lines on the edges.

The case was tried to a jury, which returned a verdict favorable to the defendant, from which verdict and the judgment entered pursuant thereto, filed May 2, 1968, this appeal is taken on questions of law. A motion for a new trial was overruled and entry filed accordingly August 14, 1968.

Plaintiff's appeal is predicated on three assignments of error: (1) The trial court should have submitted only one form of verdict to the jury, and that favorable to the plaintiff, because the defendant was negligent as a matter of law, and his negligence was the sole proximate cause of the decedent's death; (2) the court erred in refusing to give plaintiff's requested special instruction numbered 8, charging that defendant violated the assured-clear-distance-ahead rule and was guilty of negligence as a matter of law; and (3) the court erred in giving special instruction numbered 7, requested by defendant, instructing the jury to determine whether a usuable walk or path existed along the roadway where the accident occured.

The formal assignments of error focus attention on the decision of the trial court to submit the questions of defendant's possible violation of the assured-clear-distance-head rule, and the possible contributory negligence of the decedent, to the jury. Plaintiff argues that both questions should have been decided by the court as a matter of law in view of the evidence submitted during the course of the trial. At the risk of oversimplication, the submission of those questions will be the approach in this review.

To call attention to the classic Ohio assured-clear-distance-ahead cases, familiar to bench and bar, is to become trite, but in the instant case a review of *Smiley* v. *Arrow Spring Bed Co.* (1941), 138 Ohio St. 81, 133 A. L. R. 960; *McFadden, Admx., v. Elmer C. Breuer Transportation Co.* (1952), 156 Ohio St. 430; and *Bickel* v. *American Can Co.* (1950), 154 Ohio St. 380, may prove to be a useful exercise. *Smiley* tells us that the assured-clear-distance statute is a safety measure requiring a speed of operation not greater than will permit the operator to stop within the distance between his vehicle and a "discernible object obstructing

his path or line of travel." *Smiley* also provides for relief from the rule when the driver's assured clear distance is suddenly cut down "which renders him unable, in the exercise of ordinary care, to avoid colliding therewith."

*McFadden* provides the rule that failure to comply with the assured-clear-distance rule is not a question for the trier of the facts where there is "no substantial evidence" (paragraph one of the syllabus) that (1) the object with which the operator collided was ahead of him in his lane of travel, (2) that it was "reasonably discernible," and that (3) it came into his lane sufficiently ahead of him to have made it possible, in the exercise of ordinary care, to stop and avoid a collision. It is emphasized that *Smiley* speaks of a "discernible" object and *McFadden* modifies by saying a "reasonably discernible" object. We note also that at page 435 the court, as if to clarify, says:

"If, however, conflicting evidence is introduced as to any one of such elements necessary to constitute a violation, a jury question is created."

*Bickel* adds only that the discernible object may be static or moving ahead at a normal speed or at a slow speed.

At this point a look at two basics is necessary, the "object" and the "path ahead." Courts have confused the path concept by using slightly differing language, *i. e.,* "path or line of travel," "lane of travel," and, in rarer instances, "line of vision." The recent decision by the Supreme Court in *Pallini* v. *Dankowski* (1969), 17 Ohio St. 2d 51, dispels any confusion resulting from the differing terms. In paragraph one of the syllabus, the court says that "ahead" as used after "assured clear distance" in the first paragraph of Section 4511.21, Revised Code, "means to the front of and within the directional line of travel of a motorist whose conduct allegedly violates such statute." At page 55, Judge Herbert comments on the term used in *Smiley* and says:

"* * * If all traffic lanes were the exact width of the vehicles moving therein, no problem could result. Since such is not the case, however, a discernible object could

be within a motorist's traffic lane of travel, but not within his directional line of travel, and the statute would have no application."

This new "directional line of travel" concept has important impact on assured-clear-distance-ahead problems, especially those involving pedestrians.

Whether the object in the directional line of travel is "discernible" or "reasonably discernible" generally presents no problem so long as the trial court is dealing with a road grader, an unlighted truck or trailer, a roll of steel, or even an oil drum, but much difficulty arises when the object is a smaller object such as a pedestrian, and the pedestrian problem becomes much more acute in these days of expressways, 4-lane divided highways, and faster moving vehicles.

Not only have the decisions of the courts given us some clean-cut examples of discernible objects, but in those cases the courts also have consistently held that fact to be controlling in finding a violation of the assured-clear-distance-ahead rule as a matter of law. Illustrative of this group of cases is the road grader case, *Carpenter* v. *McCourt Construction Co.* (1957), 106 Ohio App. 67. In contrast to the cases involving the clearly discernible objects, we note the "hole in the road"' cases where discernibility is a real question. *Novy, Admrx.*, v. *Cleveland* (1957), 76 Ohio Law Abs. 137, is a case in which a directed verdict was refused, which the Court of Appeals said was proper because the evidence was such "that reasonable minds could differ as to the discernibility of the hole, within the meaning of the assured clear distance rule, the court did not err in refusing to direct a verdict for defendant." A later case, *Applegate, Admx.*, v. *Harshman* (1962), 89 Ohio Law Abs. 567, suggests that the trial court was entirely right in refusing to charge on assured clear distance ahead. The headnote rule is as follows:

"2. The assured clear distance rule is not applicable unless it be shown that the defect is discernible in time to permit the driver to avoid it."

In those cases, and many others, the obstructing ob-

ject must be discernible to invoke the operation of the assured-clear-distance-ahead rule.

There are many pedestrian cases in Ohio with varying fact patterns. Only a few decisions appear to consider carefully the basic question as to discernibility. This Court of Appeals, then the Second Appellate District, does approach the problem in *Smith* v. *Torbett* (1956), 75 Ohio Law Abs. 174, which is a case most important to this decision. The court held that it was not error to charge on contributory negligence, since the plaintiff was walking along the road there was "the possibility that because of her wearing apparel, dark in color, she might not be visible to an on-coming motorist in time to prevent injury to herself."

The decision of the Miami County Court of Appeals in *Gates* v. *Dills* (1967), 13 Ohio App. 2d 163, turns on other points, as indicated by the syllabus, but reference to the "dark form" of the plaintiff as a factor in the fact pattern indicates some attention to the question of discernibility (pages 167 and 169). Both appellant and appellee rely upon the decision in *Micelli, Admr.,* v. *Hirsch* (1948), 52 Ohio Law Abs. 426, to support their respective positions, but at this point we note it because of the statement of the court indicating concern as to the discernibility of the pedestrian, in *Micelli* prone on the highway, as to at least one of two drivers involved. At the bottom of page 430, the court speaks as follows:

"The object which obstructs traffic must be discernible before the statute can apply. This should not mean an object which Bailey did see but an object which Bailey should and could have seen if he was operating his motor vehicle in the manner required by law."

No attempt was made to review decisions of other jurisdictions in connection with this discussion, but some came to notice incidentally. Two are noted as having something to say as to the discernibility of a pedestrian. *Johnson* v. *Anoka-Butte Lumber Co.* (1942), 141 Neb. 851, 5 N. W. 2d 114, was concerned with a pedestrian wearing a blue suit and a dark coat who was walking on the left side

of the road facing oncoming traffic (which the court said was "the safest method for a pedestrian to travel longitudinally on a public highway"). The court also said, "That a pedestrian so dressed would be more difficult to see goes without saying." (Page 856.) The court added that a motorist with proper headlights as required by statute, "who does not observe a pedestrian until just before striking him, is not conclusively guilty of negligence. Under such circumstances it is clearly a question for the jury."

A Connecticut case, *Schmeiske* v. *Laubin* (1929), 109 Conn. 206, 145 A. 890, respecting the common-law rule concerning the right of the pedestrian on the highway, held as follows, at page 208:

"* * * in the absence of controlling legislation, a pedestrian has the right to walk, dressed in dark clothing, along a dark road, with his back to approaching traffic, but if he does so he is bound to exercise care proportionate to the danger inherent in such an undertaking. * * *"

At page 210, the court elaborates, as follows:

"* * * because a dark object, resting upon a dark background, may not be clearly visible under all conditions at a distance of two hundred feet in front of a motor vehicle equipped with headlights which meet the statutory requirements, the failure of the operator of such a vehicle to see such object at that distance may not conclusively establish a lack of due care on his part. The court did not err in submitting to the jury the question of the negligence of the operator of the defendant's car."

The court held that for the operator, with proper headlights, it was not negligence per se in not seeing the pedestrian and that the possible contributory negligence of the pedestrian was for the jury.

The assured-clear-distance-ahead rule is applicable in those situations where a "discernible" object is ahead of the motorist and within his "directional line of travel," and it makes no difference in the applicability of the rule if the "object" happens to be a pedestrian.

Several common-law rules governing the use of the

road by a pedestrian and his rights and duties while traveling thereon are noted by the decisions, particularly those from states having no statute relating to the pedestrian. Those rules influence decisions in states having statutory regulations. Some of the common-law rules noted are: the pedestrian has a right to travel anywhere upon a public highway; a driver is bound to anticipate the presence of pedestrians upon the road; pedestrian and driver have equal and concurrent rights to travel upon the highway, etc. It is equally important to note also the common-law rule that the pedestrian on the highway must exercise reasonable care for his own safety considering conditions existing on the highway at the time he travels on it. (41 A.L.R. 1927, etc.)

The influence of the common-law rules may not be denied, but Ohio does have a statute. The text writers discuss "Pedestrians Walking Along Highway or Street," 7 American Jurisprudence 2d 948, Section 400, and introduce the subject by saying, "In the absence of an applicable statute or ordinance, a pedestrian has the right to walk longitudinally along a highway * * *." (See, also, 7 American Jurisprudence 2d 603, Section 10.) Ohio does have a statute, the terms of which are important to this discussion. Section 4511.50, Revised Code, the first portion of which is prohibitive, says that where "usable walks or paths parallel" the highway, pedestrians shall not walk "in, along, or upon the vehicular traveled portion" of such highway. The second paragraph of the section reads as follows:

"Where usuable walks or paths are not provided parallel to the street or highway, pedestrians may walk along or upon the traveled portion of such street or highway, and, when practicable, they shall face the approaching traffic and shall exercise due care to avoid approaching traffic."

That section is applicable in the instant case and supersedes any common-law rule to the contrary.

A rather early Ohio case, *Curtis* v. *Hubbel* (1932), 42 Ohio App. 520, cited by both parties in this case, makes a broad pronouncement, as to a predecessor General Code

section, about the pedestrian's right. Paragraph two of the syllabus says:

"There being no crosswalks or cinderpaths paralleling highway, pedestrian had right to walk on right side of road as regards motorist's duty.* * *"

Because the instant case is concerned with an "approaching" vehicle, we note a decision construing Section 4511.49, Revised Code, directed to pedestrians, *Leach Admx.*, v. *Nanna* (1955), 100 Ohio App. 26, in which the court held that such section "does not require a pedestrian, as a matter of law, to look behind him for approaching vehicles to see what course the vehicle traveling in the same direction may take."

The case of *Perry* v. *Baskey* (1952), 158 Ohio St. 151, is of particular interest to this review. On a dark, rainy evening a pedestrian walked along the edge of a macadam roadway with a gravel berm, moving with the traffic and was struck from the rear. The defendant motorist disputed some of these facts, but of interest here is the pronouncement of the court as to the predecessor General Code section to Section 4511.50, Revised Code. (Provisions of the section are the same.) Paragraph two of the syllabus refers to the portion applying where usable walks are not provided and says that the section "prescribes a rule of conduct and is not a specific requirement, and it is prejudicial error for a trial court to charge the jury that a pedestrian who walks along or upon a highway with the traffic and not against it is chargeable with negligence as a matter of law." The reason advanced by the court for so holding is a quote from the decision of the Court of Appeals which the Supreme Court approves. At the bottom of page 156, the Court of Appeals language is—referring to Section 6307-48 (b), General Code—as follows:

"* * * 'does not enjoin a specific duty but rather a rule of conduct, as it left something to the plaintiff's discretion by the proviso that the pedestrian "where practicable, shall face the approaching traffic" and also by the further provision that such pedestrian shall exercise ordinary care.' "

If it appears disturbing that the Court of Appeals quote does not end with the phrase "to avoid approaching traffic," it is noted that those words are included by the Supreme Court in paragraph two of the syllabus. Still further, it must be said that because the practicing attorney may distinguish "approaching" traffic and "overtaking" traffic, it does not follow that the Legislature makes that distinction. On the contrary, it must be presumed that approaching is given its ordinary meaning as supplied by Webster. Approaching traffic is traffic that "advances or maneuvers toward one."

The rule in *Perry, supra,* positively stated, is that a pedestrian who walks along a highway shall "where practicable" face the oncoming traffic and shall "exercise due care" to avoid the traffic approaching. Whether it is "practical" to face the traffiic and whether the pedestrian used "due care" are questions for the jury as well as the question produced by the first paragraph of the section, whether "usable walks or paths" parallel the highway.

Plaintiff strenuously urges, in brief and oral argument, that the question of violation of the assured-clear-distance-ahead rule by the defendant should not have gone to the jury, particularly insisting that the jury should not have been permitted to decide whether Mrs. DiFederico was a discernible object. Plaintiff, however, puts in issue many factors, including in his petition as specifications of negligence, *i. e.,* speed of defendant's vehicle, all of the assured-clear-distance factors set out in *Smiley* and *McFadden, supra,* failure to keep a lookout, as well as that defendant diverted his course to the right or failed to divert it to the left. Evidence adduced bears upon speed, discernibility, position of plaintiff's decedent on the road, adequacy of lights (and lookout), and possible change of direction.

Many other decisions deal with the question of what should go to the trier of the facts in negligence cases, including assured-clear-distance-ahead cases. *McFadden, supra,* provides a negative approach, saying that there is no question for the jury as to possible failure to comply

with the assured-clear-distance-ahead rule where there is "no substantial evidence" that the object was located in the operator's lane of travel (now directional line of travel), and reasonably discernible, static or moving ahead, and came into the lane of travel a reasonable distance ahead. Other cases approach the matter positively, such as *Rothe* v. *Dworkin* (1946), 47 Ohio Law Abs. 452, dealing with the speed factor. The court held as follows:

"* * * factual questions arising from testimony of witnesses as to the speed of defendant's vehicle, the distance of such vehicle from the left hand curb, along with other circumstances connected with the accident are questions for submission to the jury."

Another speed case is *Gutter* v. *Frazer* (1963), 120 Ohio App. 305, holding that whether a rate of speed is reasonable and proper is for the jury. A parked truck and blinding lights were facts in *Brown* v. *Wackman* (1949), 87 Ohio App. 61. and the court held that whether there was excuse for failure to observe the assured-clear-distance-ahead rule was for the jury.

Pedestrian cases are abundant in Ohio. There are many kinds of factual situations, pedestrians at intersections, in and out of crosswalks, as well as traveling longitudinally on a highway. A substantial number of pedestrian cases go to a jury. It is not always clear whether they go to the jury on the assured-clear-distance-ahead question or simply to determine if there be contributory negligence on the part of the pedestrian. Some clearly approve submitting the applicability of assured clear distance ahead to the jury. Typical of those cases is *Glasco* v. *Mendelman* (1944), 143 Ohio St. 649, which is cited by both parties to this appeal. Plaintiff seems to offer *Glasco* to support the contention that the defendant in the instant case was negligent per se. It is noteworthy that the Supreme Court says, at page 656, that under the evidence in the case the question of proximate cause was one of fact and for the jury. Paragraph two of the syllabus describes the physical setting of the incident, and then concludes as follows:

"* * * the question of whether the driver of such automobile was guilty of a violation of 'the assured clear distance ahead' provision of the then existing statute, was properly submitted to the jury."

*Jahraus* v. *Fryman* (1954), 70 Ohio Law Abs. 558, follows the syllabus rule in *Glasco* and implies that the "proper lookout" question is closely related if not a part of the assured-clear-distance-ahead question.

A decision of this court, *Hardy* v. *Crabbe* (1961), 114 Ohio App. 218, cited by the plaintiff, holds that the assured-clear-distance-ahead rule was applicable where the evidence showed that plaintiff, pedestrian, was in the "path" of defendant's vehicle as it approached the point of impact. Again, the court says that the facts present a jury question. The closing part of the fifth paragraph of the syllabus reads as follows:

"* * * the assured-clear-distance-ahead rule is applicable, and the refusal of the court to charge the jury on such rule is prejudicial error."

Plaintiff cites *Meuer, Admx.,* v. *Doerflein* (1936), 53 Ohio App. 536, presumably in support of the common-law proposition that a pedestrian has equal right with a motorist in the use of the road. The court speaks strongly at page 539, saying that the driver completely ignored the mandate of the statute. The court also says, "We find no error in the giving of the charge upon the 'assured clear distance ahead,' " which seems to suggest that applicability of the assured-clear-distance-ahead rule is for the jury. Following a similar vein is *Johnson* v. *Anoka-Butte Lumber Co.,* 141 Neb. 851, 5 N. W. 2d 114, in which, at page 118, the court quotes from a Massachusetts case, *Booth* v. *Meagher* (1916), 224 Mass. 472, 113 N. E. 367, as follows:

" 'Whether the principal defendant was negligent in not sooner seeing the plaintiff and in not so operating his automobile with reference to the concurrent right of the plaintiff and himself to travel upon the public way as to avoid a collision, was for the jury.' "

Many times the question as to the violation of the assured-clear-distance-ahead rule is properly for the jury.

Fact patterns such as found in *Sprung, Admr.,* v. *E. I. du-Pont de Nemours & Co.* (1939), 30 Ohio Law Abs. 278, appear to be the exception rather than the rule.

*Smiley, supra,* also supplies the rule which offers relief from the assured-clear-distance-ahead rule. Relief from the rule comes when the assured clear distance ahead is suddenly cut down. Some times the courts speak of sudden emergence, or simply of an emergency. Plaintiff urges that the trial court was wrong in charging the jury as to possible relief from the assured-clear-distance-ahead rule. Perhaps the evidence as to such a sudden move by the plaintiff into the directional line of travel of the defendant is not too compelling, but such move is possible under the evidence. Mr. DiFederico says that he and his wife changed places while walking along the highway. He said she was walking on the white line—"I guess." Tire marks made by the defendant's car were four feet from the edge of the road, and the defendant said he followed a car ahead which did not change direction, both cars being in the middle of the right lane. The evidence is sufficient to support the fact that plaintiff's decedent could have moved suddenly to a position where the right front headlight of defendant's car could strike her.

*Hemmelgarn* v. *Bailey* (1950), 61 Ohio Law Abs. 179, supplies the basic rule that assured clear distance ahead does not apply "when a discernible object obstructing the path or line of travel suddenly enters within the clear distance ahead * * *." *Elfers* v. *Bright* (1958), 108 Ohio App. 495, supplies the corollary that an assured-clear-distance-ahead rule violation may be excused where compliance became impossible and the driver was without fault. The burden is on the operator to sustain the excuse and the question is for the jury.

When relief from the rule is sought, the question is most commonly for the jury. Typical cases are *Reeves* v. *The Joe O. Frank Co.* (1945), 76 Ohio App. 1; *Schultz* v. *Meyerholtz* (1951), 91 Ohio App. 566; *Rogers* v. *Anchor Motor Freight, Inc.* (1953), 95 Ohio App. 62; *Sherer* v. *Smith, a Minor* (1951), 155 Ohio St. 567; and *Tenhunfeld* v. *Park-*

*way Taxi Cab Co.* (1957), 105 Ohio App. 425, which holds that the question is a mixed question of law and fact. See, also, *Walcott* v. *Fuller* (1938), 83 Ohio App. 176.

Plaintiff cites *Erdman* v. *Mestrovich* (1951), 155 Ohio St. 85, which provides a somewhat different emphasis. Paragraph two of the syllabus recognizes the "suddenly cut down" relief, but the rule in paragraph three of the syllabus puts the problem differently. It says that no assured-clear-distance-ahead instruction shall be given a jury:

"* * *unless there is evidence tending to show that the pedestrian came into the operator's assured clear distance ahead at a point sufficiently distant ahead of the motor vehicle as to have permitted the operator, in the exercise of ordinary care, to have stopped his motor vehicle before striking the pedestrian."

*Miller* v. *Jackson* (1951), 92 Ohio App. 199, bears upon the problem, putting the rule still differently. The court held that it was not error for the court to refuse to charge on the assured-clear-distance-ahead rule where it was disclosed that the assured clear distance ahead was suddenly lessened by the entrance of a pedestrian into the motorist's "line of travel."

The trial court told the jury that the issue in this case was primarily—Was the defendant negligent? and, on the other hand, Was the plaintiff (this decedent) negligent? The court related the question of proximate cause to each. Plaintiff urges that the defendant was negligent as a matter of law, which negligence was the *sole* cause of the death of Mrs. DiFederico. That position requires that the evidence clearly shows no act or conduct on the part of the decedent that could be regarded as negligence and a proximate cause of her death. Plaintiff's argument would be more compelling but for the statutory limitations on the movements of pedestrians on highways found in Section 4511.-50, Revised Code.

If there was a "usable walk or path" paralleling the highway, and the decedent was not on the path or walk but chose to use the road, she could be contributorily negli-

gent if she walked without due care. If it were "practicable" to walk so as to face oncoming traffic on this occasion and the DiFedericos did not, the decedent would be negligent. The evidence shows a grass median strip 8 feet wide, and a gravel berm 27 feet in width, at the point of impact. Plaintiff's Exhibit 6 shows a section of the berm near the scene of the accident, which shows the berm to have some holes filled with water, but the balance of the surface appears to be passable. The question—for the jury—is whether Mrs. DiFederico could walk on the berm but, as a matter of personal choice, preferred to walk on the road. This becomes a question, the answer to which is most significant, when the evidence shows that Mr. DiFederico changed places with his wife and then walked on the berm himself. If the edge of the road was "usable" by the man, would it not also be "usable" by the woman?

Possible violation of these phases of the "cinder path" statute could or would be contributory negligence, to say nothing of the "due care" to be exercised to avoid "approaching" traffic. The possible contributory negligence of the decedent not only involves consideration of these specific matters of statutory violation but the much larger question of whether a reasonably prudent person would have acted as this decedent did under all the surrounding circumstances and conditions prevailing on that given night in this particular place. The "reasonably, prudent person" concept might even be the test to apply to a person walking on the edge of a heavily traveled roadway, dressed in dark clothes (see *Smith, supra*), on a rainy, dark night with traffic approaching from the rear. It is even conceivable that a reasonably prudent person would not have become a pedestrian on Olentangy River Road, after midnight, on such a night as February 10, 1965, dressed in dark clothing, the only justification for the errand being a cup of coffee.

The question of contributory negligence in the instant case is for the jury. Assume the negligence of the defendant, from the evidence contributory negligence and proximate cause are still issues and for the jury. At least it must

152

be said that they are most commonly for the jury. The court in *Ziebro, Admx.,* v. *Cleveland* (1952), 157 Ohio St. 489, certainly infers that it is, although the court in the case before it held that there was no reasonable inference other than that of negligence on the part of the pedestrian that directly and proximately contributed to his injury, and the question, therefore, ceases to be for the jury and the trial court is obliged to direct a verdict for the defendant motorist. (See, also, *Moody* v. *Vickers* [1947], 48 Ohio Law Abs. 353.)

In passing, note that when a statutory enactment prescribes only a general rule of conduct, negligence per se has no application. *Eisenhuth* v. *Moneyhon* (1954), 161 Ohio St. 367, speaks of rules of conduct for the "safety of others." Paragraph three of the syllabus, in applicable part, is as follows:

"* * * where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case."

Section 4511.50, Revised Code, is such a statute, except that in this instance it is for the pedestrian's own safety. By the same token, the test is due care by a reasonably prudent person, which makes a jury question. (See, also, *Koppelman, a Minor,* v. *Springer, a Minor,* [1952], 157 Ohio St. 117, which deals with a similar statute prescribing a general rule of conduct.)

Finally, attention is directed to four cases cited by the plaintiff, one of them being cited also by the defendant. Presumably, the one cited by both, *Phillips* v. *Weeden* (1934), 18 Ohio Law Abs. 229, serves the purposes of both parties. It helps the plaintiff because the court said there was no reason why the defendant-motorist in the exercise of ordinary care should not have seen the pedestrian. The result does not turn on this point, however, because the case went to the jury, which found for the plaintiff, not, therefore, contributorily negligent, and the Court of Appeals

said that it was not able to say that such verdict was against the manifest weight of the evidence.

The plaintiff cites *Focht* v. *Justis* (1947), 81 Ohio App. 297, a case in which a pedestrian stepped off a curb and failed to look to the left. The court held that such fact would not justify a directed verdict for the defendant. No pedestrian was involved in *Brown* v. *The Jennings-Lawrence Co.* (1958), 107 Ohio App. 409, in which case the motorist was the plaintiff who struck a surveyor's tripod. The court held that the plaintiff's own testimony raised a presumption of the violation of the assured-clear-distance-ahead rule and the trial court had a duty to direct a verdict in favor of the defendant. A driver who drove 200 feet in the face of blinding sun without reducing his speed is the central figure in *Nagata* v. *Kahului Development Co., Ltd.* (1966), 49 Haw. 378, 420 P. 2d 103. The court said that such facts make the violation of the assured-clear-distance-ahead rule a question of law for the court. That same court also suggests that if reasonable minds might differ on conclusions to be made from the evidence it is a question for the jury.

In conclusion, it is suggested that a careful review of the evidence adduced raises several questions that must be resolved by a jury, from the facts, and inferences properly drawn therefrom, as to whether plaintiff's decedent was a discernible object, in the directional line of travel of the defendant, who entered that line of travel sufficiently far enough ahead to enable the defendant to stop; as to whether defendant's assured clear distance ahead was suddenly cut down; as to whether it was practicable for the plaintiff and his decedent to face oncoming traffic, and if not did the decedent use "due care" while on the road; and, finally, as to whether the decedent was contributorily negligent—specifically as to possible violation of the statute involved—and broadly as to whether the decedent behaved as a reasonably prudent person considering all the circumstances with which she was confronted on that particular evening.

These questions were properly submitted to the jury

by the trial court under appropriate instructions. The trial court was correct in submitting two forms of verdict to the jury. There is no error prejudicial to the plaintiff apparent in the record.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and HOLMES, JJ., concur.