Margaret Irene **NOLTE**, Appellant,

v.

**Judy L. CASE**, Appellee.

No. 56553.

Supreme Court of Iowa.

Sept. 18, 1974.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellant.

Hopkins, Bump & Huebner, Des Moines, for appellee.

Heard before REYNOLDSON, Acting C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

MASON, Justice.

Margaret Nolte brought a law action to recover for injuries sustained when she was struck while walking across University Avenue in Des Moines near the intersection of 41st Street by a motor vehicle driven by defendant, Judy Case. Trial to a jury resulted in a defendant's verdict. Plaintiff's motions for new trial or for judgment notwithstanding the verdict were overruled and she appeals.

University Avenue is a four-lane road with two eastbound and two westbound lanes; each lane is approximately 13 feet wide. 41st Street, a two-lane road, forms a "T" intersection with University as it enters the avenue from the north but does not continue to the south. There was no delineated crosswalk on University Avenue at this intersection at the time.

The accident occurred about 3:00 p. m. February 28, 1972. The temperature was 66 degrees and it was a bright, clear and sunshiny day.

As the 74-year-old plaintiff stepped from the north curb line of University at a point approximately 10–15 feet east of the east curb line of 41st Street and proceeded in a southerly direction across the street, westbound traffic in both lanes of University

stopped, according to witnesses, rather suddenly or abruptly. Plaintiff proceeded to the center of University and paused for a second or two. The driver of an eastbound vehicle in the lane nearest the center stopped for her; a second car stopped rather abruptly directly behind the first vehicle. The driver of the first stopped eastbound motor vehicle motioned plaintiff to proceed across the street in front of him. Plaintiff walked in front of the stopped vehicle but as she moved into the southernmost eastbound lane she was struck by defendant's automobile either with the left side of the car or between the left headlight and the center of the grill.

The posted speed limit for eastbound traffic on University Avenue was 30 miles per hour. Defendant and other eyewitnesses estimated her speed prior to braking at 25–30 miles per hour. An expert calculated defendant's speed at 40 miles per hour based on the point of impact, length of skid marks, and a formula utilizing the coefficient of friction.

Defendant testified she first saw plaintiff when she stepped into the south lane of eastbound traffic from in front of the stopped cars in the north lane. Defendant immediately applied her brakes and laid down from 37 feet five inches to 42 feet five inches of skid marks before impact but was unable to stop before striking plaintiff.

The petition and amendment thereto contained several specifications of negligence including an allegation defendant was negligent, "in operating her motor vehicle at a speed in excess of that which would have permitted her to bring her motor vehicle to a stop within the assured clear distance ahead."

At the proper time the court, after submitting a proposed draft of its instructions to counsel, inquired if plaintiff had any objections or exceptions to the instructions. At that point plaintiff took exception to the court's refusal to submit the issue of assured clear distance in violation of chapter 321.285, The Code, as plead. There is no issue as to the sufficiency of plaintiff's objection in this respect. The court overruled plaintiff's objections and exceptions and refused to instruct as to the assured clear distance statute.

Thus, there is presented for review the propriety of the trial court's refusal to instruct the jury regarding the alleged negligence of defendant in failing to operate her vehicle at such a speed that the same could be brought to a stop within the assured clear distance ahead.

Plaintiff divides her brief into two points, (1) error in court's failure to instruct and (2) error in refusal to instruct, both of which concern the applicability of the assured clear distance ahead rule. The contentions will be considered together.

I. Defendant contends the rule is inapplicable in this situation and therefore the trial court did not err. Plaintiff argues the facts establish a jury question as to negligence for failure of defendant to control her car so as to be able to stop within the assured clear distance ahead.

■ In determining whether a jury question was engendered the evidence is viewed in the light most favorable to the party having the burden of proof and if reasonable minds can differ on the issue it is for the jury. West v. Broderick & Bascom Rope Company, 197 N.W.2d 202, 211 (Iowa 1972); Coppola v. Jameson, 200 N. W.2d 877, 879 (Iowa 1972).

Section 321.285, The Code, 1971, in pertinent part provides:

"Speed restrictions. Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the as-

sured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

An explanation of the statute is seen in this statement:

"The words 'assured clear distance ahead' as used in this statute signify that a driver of a motor vehicle shall at all times be able to stop his vehicle within the distance that discernible objects may be seen ahead. A driver's duty in this respect is not varied or diminished when the assured clear distance is shortened by blizzard conditions, darkness of night or presence of a fog or rain or other conditions of the weather.

"The assured clear distance constantly changes as the motorist proceeds and is measured at any moment by the distance between the motorist's vehicle and the limit of his vision ahead, or by the distance between the motorist's vehicle and any intermediate discernible static or forward-moving object in the highway ahead constituting obstruction in the motorist's proper lane of travel. The operator's obligation may be heavier in one case than another due to circumstances existing at that time such as blowing snow, icy and snow packed highways. See Coppola v. Jameson, 200 N.W.2d 877, 879–880 (Iowa 1972) and authorities cited." Ruan Transport Corporation v. Jacobs, 216 N.W.2d 182, 185 (Iowa 1974).

Most often the discernible object involved is another car or other vehicle. See Anderson v. Kist, 229 Iowa 462, 294 N.W. 726; Tuhn v. Clark, 241 Iowa 441, 41 N.W.2d 13; and Campbell v. Martin, 257 Iowa 1247, 136 N.W.2d 508. In Demers v. Currie, 258 Iowa 507, 139 N.W.2d 464 the object in the lane of travel was a cow.

■ Pertinent to the facts here, the "object" can be a pedestrian. See Watson v. Home Mutual Ins. Ass'n, 215 Iowa 670, 246 N.W. 655; Howk v. Anderson, 218

Iowa 358, 253 N.W. 32; Swan v. Dailey-Luce Auto Co., 225 Iowa 89, 277 N.W. 580; Miller v. Jackson, 92 Ohio App. 199, 107 N.E.2d 922; and DiFederico v. Reed, 21 Ohio App.2d 137, 255 N.E.2d 869.

■ Plaintiff argues a jury question was established in regard to alleged negligence from violation of this statute. The following statement from Coppola v. Jameson, 200 N.W.2d at 880 sets out the test and circumstances for determining when a jury question on the issue of the applicability of section 321.285 exists:

" * * * [W]here there is substantial evidence:

" '(1) That the object with which the operator collided was located ahead of him in his lane of travel;

" '(2) That such object was reasonably discernible; and

" '(3) That the object was (a) static or stationary, (b) moving ahead of him in the same direction as such operator, or (c) came into his lane of travel within the assured clear distance ahead at a point sufficiently distant ahead of him to have made it possible to bring his vehicle to a stop and avoid a collision.' Cerny v. Domer, 13 Ohio St.2d 117, 123–124, 235 N.E.2d 132, 137 (1968)."

No argument is made by either party whether plaintiff was a reasonably discernible object; plaintiff merely asserts she was discernible while defendant presents no argument whatsoever in this regard. However, see DiFederico v. Reed, 21 Ohio App.2d at 140–143, 255 N.E.2d at 872–874.

The vital question is whether there is substantial evidence in the record to bring plaintiff within the scope of paragraph (c) of category (3) set forth in *Coppola*.

Defendant in support of the trial court's refusal to give an instruction on the assured clear distance insists the rule is inapplicable unless there is evidence tending to show that the pedestrian came into the op-

erator's assured clear distance ahead at a point sufficiently distant ahead of the motor vehicle as to have permitted the operator, in the exercise of ordinary care, to have stopped her motor vehicle before striking the pedestrian. She argues the present record discloses no such evidence; as a matter of fact, it tends to establish plaintiff suddenly stepped out from in front of the first eastbound vehicle in the northernmost lane into defendant's path.

■ Inapplicability of the rule has been termed an exception and exists, " * * * where an established assured clear distance is suddenly and unexpectedly shortened and obstructed by some not reasonably anticipated intrusion by another rapidly approaching or converging vehicle into the driver's path. * * * [citing authorities]." Coppola v. Jameson, 200 N.W.2d at 880. See also Miller v. Stender, 251 Iowa 123, 132–133, 98 N.W.2d 338, 344 and Wells v. Wildin, 224 Iowa 913, 922, 277 N.W. 308, 313. The exception applies when a pedestrian is the object entering the driver's lane of travel. Miller v. Jackson, 92 Ohio App. 199, 107 N.E.2d 922, 924, quoting from Erdman v. Mestrovich, 155 Ohio St. 85, 97 N.E.2d 674, 675. See also DiFederico v. Reed, 21 Ohio App.2d at 143, 255 N.E.2d at 874.

In our decisions considering the applicability of section 321.285, The Code, the court has used, among other expressions, the term "lane of travel," "the path of defendant's travel," "the motorist's proper lane of travel" and "line of vision."

■ In order to dispel any confusion from the use of differing terms in these cases we point out "ahead" as used after "assured clear distance" in this statute and the word "lane," as well as similar expressions appearing in our decisions considering the question, mean to the front of and within the directional line of travel of a motorist whose conduct is sought to be brought within the statute's application. The Ohio court has announced a similar

determination as to the meaning of its assured clear distance statute in Pallini v. Dankowski, 17 Ohio St.2d 51, 245 N.E.2d 353, 356–357.

Although the record does not show the trial court's reason for refusing to instruct the jury in regard to plaintiff's specification of negligence alleging violation of the assured clear distance ahead statute, the court did in effect hold the record did not warrant submission of the specification.

■ Whether a specification of negligence should be submitted to the trier of fact depends on the evidence which supports it. Cavanaugh v. Jepson, 167 N.W. 2d 616, 619 (Iowa 1969).

■ There is, of course, no duty to instruct upon an issue without substantial support in the evidence or with support resting only on speculation or conjecture. A mere scintilla of evidence is not sufficient. Walker v. Sedrel, 260 Iowa 625, 632, 149 N.W.2d 874, 878 and Hawkeye Security Insurance Co. v. Ford Motor Co., 199 N.W.2d 373, 383 (Iowa 1972).

■ Under the sufficiency-of-evidence test announced in Coppola v. Jameson, 200 N.W.2d at 880 plaintiff had the initial burden of producing sufficient substantial evidence to satisfy the trial judge the jury acting as persons of reasonable minds would be justified in drawing the conclusion from the facts and circumstances proved plaintiff came into defendant's directional line of travel at a point sufficiently in front of defendant to have made it possible for defendant in the exercise of due care to bring her vehicle to a stop and avoid the collision. Plaintiff's burden of going forward with the evidence in this first stage of the trial is distinct from plaintiff's burden of persuading the jury or trier of fact by a preponderance of the evidence defendant was negligent in violating section 321.285 in order to sustain a favorable verdict in regard to this specification of negligence.

The following is a fair summary of the evidence before this court bearing on the issue presented for review.

At the time, there were no signal lights controlling the movement of traffic on University Avenue at the point of the accident but traffic travelling south on 41st Street was required to stop before entering University.

The day of the accident Billy Lee Kimber, accompanied by his wife, was driving south on 41st Street. He stopped at the intersection in obedience to the stop sign, intending to turn west on University after waiting for oncoming traffic from the east. While he thus waited the accident occurred. Kimber and his wife were both called as plaintiff's witnesses.

Kimber could not recall how long he had been stopped before the accident but testified he had had opportunity to observe Mrs. Nolte walking westerly up the north sidewalk on University. According to Kimber, Mrs. Nolte stopped at a point some distance east of the east sidewalk on 41st Street, turned to the south and stepped from the curb. The westbound traffic in the first lane stopped to let Mrs. Nolte cross in front. When she got to the second lane of the westbound traffic another car stopped in that lane. A car in the northernmost eastbound lane also stopped. Mrs. Nolte then proceeded to the center of the avenue and waited while two or three cars in the outer eastbound lane passed the vehicle stopped in the inside lane. At this point in time "she walked out in front of the other car and right directly out in front of Mrs. Case." The witness estimated the speed of the Case car at between 20–30 miles per hour.

Mrs. Kimber first noticed plaintiff when plaintiff was facing south getting ready to cross University. The witness testified Mrs. Nolte stopped very briefly at the center of the street until the eastbound vehicle in the inside lane stopped. There were maybe a couple of eastbound cars travel-ling in the outside lane which passed the car stopped in the inside lane.

It was the witness' opinion Mrs. Nolte could not have taken more than a step or two from her position in front of the eastbound vehicle stopped in the inside lane. It was her version Mrs. Nolte was hit "just right after she had stepped out from that car that had already stopped." Without objection, she testified "Mrs. Nolte couldn't see the oncoming traffic until she had stepped out into it and the oncoming traffic couldn't see her until they were right there."

Plaintiff, as a witness in her own behalf, testified she was going to a grocery store pulling a shopping cart as she walked west on the north sidewalk of University the day of the accident. Mrs. Nolte remembered stepping from the curb at 41st Street but not a great deal more. She said, "It was all wiped out because I was not myself for a long time." Mrs. Nolte did not recall any east or westbound traffic at the point in question.

The record before this court contains the testimony of two other witnesses called by plaintiff. One was the consulting engineer engaged in accident reconstruction work who, as stated, calculated defendant's speed at 40 miles an hour at point of impact. The other was a Des Moines police officer who arrived at the accident scene sometime after Mrs. Nolte had been removed in an ambulance and after defendant's vehicle had been moved. The officer's testimony was mainly in regard to observations and measurements made at the scene. He estimated the speed of the Case vehicle to be 25–30 miles per hour.

The remaining eyewitness, Julius M. Rosenberg, was called by defendant. Mr. Rosenberg, a Des Moines insurance agent, was the driver and sole occupant of the second car stopped in the northernmost lane for eastbound traffic while Mrs. Nolte passed in front of the first car stopped in this lane. The witness first observed Mrs.

Nolte standing on the north side of University east of 41st Street. He said he could see plaintiff was going to cross the street. Both Rosenberg and the car in front of him slowed down as plaintiff proceeded to step from the north curb about 10–15 feet east of the east sidewalk on 41st Street. As plaintiff did so the westbound traffic came to a sudden halt. Mrs. Nolte proceeded straight across University and after she got in front of the vehicle stopped in front of Rosenberg she looked neither right nor left.

Rosenberg observed the Case car approaching from the west in the outside lane. As the Case car passed Rosenberg on the right simultaneously Mrs. Nolte stepped from in front of the stopped car into Mrs. Case's vehicle, a distance of maybe three feet. Rosenberg estimated the speed of the Case car at approximately 25 miles per hour.

Defendant estimated her speed just prior to the application of her brakes at 25 to 30 miles per hour. She testified she first saw plaintiff as plaintiff stepped from in front of the eastbound vehicle which was stopped in the eastbound lane nearest the center of the street and immediately applied her brakes.

Giving the foregoing evidence the interpretation most favorable to plaintiff it shows without dispute plaintiff did not come into defendant's directional line of travel until she stepped two to three feet from in front of a stopped vehicle into the outer lane for eastbound traffic at the moment of impact. Defendant immediately applied her brakes but was unable to avoid the collision.

Nevertheless, plaintiff insists the surrounding facts and circumstances of any given case are important factors in determining the applicability of the statute. She contends the evidence shows University was heavily traveled at the time; it was daylight and a clear, sunny day; plaintiff was crossing "near" a crosswalk and had traversed approximately 41 feet from the north curb of University before being struck; and defendant's vehicle left skid marks of 42 feet 5 inches after defendant applied the brakes but before the collision. Plaintiff maintains this evidence entitled her to have the specification submitted.

It is true there is support in the record for plaintiff's description of the surrounding facts and circumstances. There is no support for the factor of reaction time relied on by plaintiff.

■ The distance of the skid marks is slightly more than twice the overall length of defendant's vehicle. Travelling at 40 miles per hour this distance would have been traversed in approximately one second. A sudden and unexpected entry of a person, motor vehicle or other object into a motorist's directional line of travel takes the case out of the assured clear distance statute. Vanderheiden v. Clearfield Truck Rentals, Inc., 210 N.W.2d 527, 530 (Iowa 1973) and authorities cited.

■ It is the court's opinion, viewing those factual circumstances which do have support in the record again in the light most favorable to plaintiff, they are not sufficient to justify submission of the issue of defendant's negligence in violation of the assured clear distance ahead rule to the jury. The trial court was correct in refusing to instruct the jury on the matter requested.

Plaintiff failed to sustain her initial burden of going forward with the evidence tending to show plaintiff was within defendant's directional line of travel at a point sufficiently in front of defendant to have made it possible for defendant, in the exercise of ordinary care, to avoid the collision.

The case is therefore—

Affirmed.